# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*In re Marriage of Sturm*, 2012 IL App (4th) 110559

| | |
|---|---|
| Appellate Court Caption | In re: the Marriage of LAURIE MICHELLE STURM, Petitioner-Appellant, and JEFFREY JAMES STURM, Respondent-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-11-0559 |
| Argued<br>Filed | February 7, 2012<br>June 12, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's determination that petitioner was not entitled to maintenance was not an abuse of discretion, notwithstanding the long duration of the marriage, since the property was fairly divided, the parties' needs were nearly the same, their earning capacities were similar, albeit substantially less than those experienced during the marriage from their sales of life insurance, and each was capable of returning to the higher standard of living they enjoyed during the marriage. |
| Decision Under Review | Appeal from the Circuit Court of Ford County, No. 09-D-13; the Hon. Stephen R. Pacey, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Thomas L. Brucker (argued), of Weeks & Brucker, Ltd., of Fairbury, for appellant.

Robert S. White (argued), of Costigan & Wollrab, P.C., of Bloomington, for appellee.

Panel

JUSTICE COOK delivered the judgment of the court, with opinion.
Presiding Justice Turner specially concurred, with opinion.
Justice Steigmann dissented, with opinion.

**OPINION**

¶ 1    Petitioner Laurie Sturm and respondent Jeffrey Sturm were married in April 1978. In March 2009, Laurie filed a petition for dissolution of marriage. On January 20, 2010, the trial court entered a judgment of dissolution of marriage in which it divided the parties' assets and denied Laurie maintenance. Laurie filed a notice of appeal. On November 18, 2010, this court entered an order (*In re Marriage of Sturm*, No. 4-10-0114 (Nov. 18, 2010) (unpublished order under Supreme Court Rule 23)) reversing the trial court's judgment that the life-insurance proceeds Laurie received were marital property and remanding with directions that the court reconsider its award of maintenance in accordance with the factors set out in section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/504(a) (West 2010)). The trial court considered those factors in a hearing on March 23, 2011, during which it heard the arguments of the parties. The court entered its order on May 31, 2011, again denying maintenance. Laurie appeals. We affirm.

¶ 2                                    I. ANALYSIS
¶ 3    The propriety of a maintenance award is within the discretion of the trial court and the court's decision will not be disturbed absent an abuse of discretion. It is well established that an abuse of discretion will be found only where no reasonable person would take the view adopted by the trial court. *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 52, 958 N.E.2d 647; *In re Marriage of Schneider*, 214 Ill. 2d 152, 173, 824 N.E.2d 177, 189 (2005). When a party challenges a trial court's factual findings regarding a maintenance determination, this court will not reverse a trial court's findings unless the findings are against the manifest weight of the evidence. Findings are against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the court's findings are unreasonable, arbitrary, and not based on any of the evidence. *In re Marriage of Nord*, 402 Ill. App. 3d 288, 294, 932 N.E.2d 543, 548-49 (2010).

¶ 4     The parties acquired significant assets during their 30-year marriage, including a marital residence valued at $130,000, Arkansas real estate valued at $174,500, motor vehicles, and personal property. Jeffrey received a $150,000 inheritance following the death of his father in 2009.

¶ 5     In recent years, both Laurie and Jeffrey were employed as life insurance salespersons by Thrivent Financial for Lutherans, each earning approximately $100,000 per year. Laurie was so employed for 25 years. A son, Derek, died unexpectedly in July 2008. After Derek's death, Laurie experienced mental and emotional health problems, and went on disability in January 2009, receiving $1,270 per month for 24 months. Laurie testified she did not believe she would be able to continue the required productivity and would, in all probability, be dismissed from her employment very soon, as a result of her mental and emotional health. Laurie testified that while not actively selling insurance, she still maintained an office, serviced clients and did not intend to quit her insurance business even though she had recently given away part of her "book of business."

¶ 6     As a result of her mental and emotional health problems, Laurie began seeing a therapist, a licensed clinical professional counselor, James Bakaitis. Correspondence from Bakaitis described Laurie's condition as a "chronic mood disorder associated with periods of mood swings." The correspondence stated that given Laurie's present "prolonged depressive episode," it was doubtful that Laurie would be able to return to her "original level of functioning within the next 12 months, if ever." The trial court did not find that correspondence, which it noted was hearsay, persuasive. There was no evidence that Laurie was under a doctor's care, other than the therapist. In its order on remand, the trial court stated the correspondence "was not adequate to substantiate an award of maintenance." The present and future earning capacity of each party is a factor to be considered in awarding maintenance. 750 ILCS 5/504(a)(3) (West 2010). However, the trial court was in the best position to determine Laurie's future earning capacity. Questions of witness credibility and conflicting evidence are matters for the trial judge to resolve as the trier of fact. Because he sees and hears the witnesses, he is in a position superior to a reviewing court for assessing their demeanor, judging their credibility, and weighing the evidence. *People v. DeWitt*, 66 Ill. App. 3d 146, 148-49, 383 N.E.2d 694, 696 (1978). We cannot say that the trial court's finding was contrary to the manifest weight of the evidence.

¶ 7     Jeffrey had been employed as a carpenter, but through Laurie's efforts, obtained employment with Thrivent Financial for Lutherans as an insurance salesman, earning as much as Laurie. In July 2009, Thrivent terminated Jeffrey's employment because he had used copied signatures of clients on transactions which required an original signature. Jeffrey obtained new employment with Pekin Insurance, with a job description essentially the same as it was with Thrivent, although he was now making less than $30,000 a year. Jeffrey continued to receive commissions from Thrivent for a year after his termination. The trial court recognized Jeffrey's argument that his conduct was not improper, that it was something he had been doing and Thrivent had never raised a question about it before. The trial court did view the termination as a voluntary change of employment, something Jeffrey had done to violate the employment contract, which did not preclude an award of maintenance based on his previous income. Still, it does not appear that Jeffrey had any intent to change his

employment, receive a lesser salary, or avoid any maintenance obligations. See *In re Marriage of Waldschmidt*, 241 Ill. App. 3d 7, 13, 608 N.E.2d 1299, 1303 (1993) (retirement in good faith).

¶ 8      During their marriage, Laurie and Jeffrey had paid the annual premiums on a life insurance policy for their son, Derek, which they continued to pay after he reached adulthood. Originally both Laurie and Jeffrey were listed as beneficiaries on the $175,000 policy, but in January 2008, Derek designated Laurie as the sole primary beneficiary and his sister, Ashley, as the sole contingent beneficiary. Laurie used the proceeds to pay Derek's bills, Ashley's tuition, rent, and credit-card balance, and the real estate taxes and homeowner's insurance on the home she shared with Jeffrey. Laurie deposited the remaining $50,644 into an annuity account she held in her name only. In its original order, the trial court found the life insurance proceeds to be marital property and ordered "[t]hat the balance of the insurance proceeds (approximately $50,000) excluding $8,925, is awarded to [Laurie] in lieu of maintenance." In our November 18, 2010, order we held that the life insurance proceeds were Laurie's nonmarital property and, therefore, could not be the basis for an award "in lieu of maintenance."

¶ 9      The trial court accepted our decision that the life insurance proceeds were Laurie's nonmarital property, but it continued to believe that maintenance was not appropriate. In dividing property or awarding maintenance it makes little difference whether property is classified as marital or nonmarital; the ultimate question is who receives it. See *In re Marriage of Mouschovias*, 359 Ill. App. 3d 348, 354, 831 N.E.2d 1222, 1226-27 (2005). The court may award maintenance after consideration of all relevant factors, "including marital property apportioned *and* non-marital property assigned to the party seeking maintenance." (Emphasis added.) 750 ILCS 5/504(a)(1) (West 2010). The court divides marital property in just proportions considering all relevant factors, including "the value of the property assigned to each spouse," that is, nonmarital property. 750 ILCS 5/503(d)(3) (West 2010). The significance of a determination that property is marital or nonmarital is that marital property may be divided, but nonmarital property must be assigned to the owner. 750 ILCS 5/503(d) (West 2010). When the trial court said, in its original order, that it was awarding Laurie the life insurance proceeds "in lieu of maintenance," it may have been saying that it was awarding her a larger share of the marital assets instead of maintenance. That is no longer the case, but the trial court apparently now sees maintenance as unnecessary because of Laurie's nonmarital assets, a factor the trial court was entitled to consider under section 504(a)(1). Again, the important consideration is the overall total of assets held by the party, not the label placed on those assets.

¶ 10                                II. CONCLUSION

¶ 11      The trial court went through the factors set out in section 504. The court concluded that the property of each party, including marital property and nonmarital property, was fairly divided. The court concluded that the needs of each party were approximately the same. The court concluded that the present and future earning capacity of each party was approximately the same, given that each was making less than $30,000 per year–down from $100,000 per

year–and each was capable of rebuilding his or her respective insurance client base. Although the marriage was of significant duration, the standard of living established during the marriage was no longer being enjoyed by either party, and the fact that both parties were in their mid-fifties did not significantly hinder either party from seeking future similar employment. The trial court's conclusion that Laurie was not entitled to maintenance was not an abuse of discretion.

¶ 12    Affirmed.

¶ 13    PRESIDING JUSTICE TURNER, specially concurring:

¶ 14    While I concur in this opinion, I write separately for two reasons. First, I choose to emphasize I took no part in this court's November 18, 2010, order finding the life insurance proceeds were Laurie's nonmarital property but accept that finding as the law of the case in this appeal. Second, in response to my colleague's spirited dissent, I note the majority opinion simply concludes the trial court did not abuse its discretion. Thus, while Justice Cook and I may have awarded Laurie maintenance, we find a reasonable trial judge could have taken the opposite view.

¶ 15    JUSTICE STEIGMANN, dissenting:

¶ 16    This case involves a woman, Laurie, in her fifties, who, after 31 years of marriage, is no longer capable of working because of the mental and emotional health problems she experienced after her son died unexpectedly one year before her divorce. After earning approximately $100,000 a year for several years, she filed a disability claim with her employer and was granted disability of $1,270 per month for 24 months.

¶ 17    The only issue in this case is whether the trial court abused its discretion when it denied Laurie's request for maintenance. The majority holds that it did not. I respectfully dissent.

¶ 18    In an effort to justify its decision, the majority attempts to diminish the evidence regarding Laurie's mental and emotional health problems. That evidence was presented through the correspondence of James Bakaitis, a licensed clinical professional counselor. The majority notes that this correspondence, which stated, in part, that it was doubtful Laurie would be able to return to her " 'original level of functioning within the next 12 months, if ever,' " was deemed by the trial court as nonpersuasive hearsay and " 'not adequate to substantiate an award of maintenance.' " *Supra* ¶ 6. The majority's analysis of this situation is questionable for several reasons.

¶ 19    First, the trial court admitted Bakaitis' correspondence without objection, which no doubt is why Bakaitis himself never testified. Second, the record contains no evidence that in any way conflicts with the Bakaitis correspondence. Third, in the same paragraph of the majority opinion (*supra* ¶ 6) in which the majority writes that the trial court found the Bakaitis correspondence " 'not adequate to substantiate an award of maintenance' " (*supra* ¶ 6) the majority notes that questions of witness credibility and conflicting evidence are matters for the trial judge to resolve as the trier of fact, explaining that because the trial judge sees and

hears the witnesses, "he is in a position superior to a reviewing court for assessing their demeanor, judging their credibility, and weighing the evidence." *Supra* ¶ 6. However, here, the trial court never saw Bakaitis, had no basis for assessing his demeanor or judging his credibility, and had no evidence to weigh that conflicted with the Bakaitis correspondence.

¶ 20     Thus, a more accurate description of what occurred in this case is that the trial court disregarded the Bakaitis correspondence (without providing any basis in the record as to why), and the majority has no trouble with the trial court's doing so.

¶ 21     That the trial court deemed the Bakaitis correspondence unpersuasive hearsay and inadequate to support Laurie's position is very troubling for another reason. In his correspondence, Bakaitis, a licensed clinical professional counselor, expressed an opinion based upon his expertise in a field that is essentially a medical specialty. Reports of a similar nature from other such experts are often offered and received into evidence at trial without objection. In addition to physicians, surgeons, psychiatrists, and psychologists, such experts may include nurses, physical therapists, medical technicians, and the like. Of course, their written reports in a given case will always–by definition–constitute hearsay, just as in the present case. But is the majority saying that such reports, when admitted without objection, may be disregarded as "unpersuasive hearsay"? Especially when, as here, there is no conflicting evidence? This would indeed be a radical holding.

¶ 22     In conclusion, I am not aware of any case within at least the last 15 years in which, after a 31-year marriage, a party's request for maintenance was denied, much less denied under the compelling circumstances of Laurie's situation in this case. The trial court's decision denying maintenance to Laurie was unreasonable, and the majority errs by not so concluding.