2020 IL App (2d) 190358-U
No. 2-19-0358
Order filed February 7, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF VALERIE E. DORGAN, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Petitioner-Appellant, | ) ) | |
| and | ) ) | No. 18-DV-409 |
| STEPHEN E. DORGAN, | ) ) | Honorable Mary H. Nader, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Justices Schostok and Bridges concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not abuse its discretion in awarding petitioner temporary maintenance and denying permanent maintenance; petitioner was awarded a greater share of the marital assets, the marriage lasted only five years, neither party was fully healthy, and to the extent that respondent allegedly promised to "always take care of" petitioner, he did not intend to do so after the marriage.

¶ 2    When the marriage of petitioner, Valerie E. Dorgan, and respondent, Stephen E. Dorgan, was dissolved, petitioner was awarded maintenance of $2099 for 11 months.  Petitioner timely appeals that award, arguing that, because of her disability and grave illnesses, she should have been awarded permanent maintenance.  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      The parties were married in November 2013.  Four and one-half years later, in May 2018, petitioner petitioned to dissolve the marriage and for temporary or permanent maintenance.  She claimed that she was entitled to permanent maintenance given the parties disparate finances and her inability to work because she suffered from multiple sclerosis (MS), lupus, and lymphoma.

¶ 5      Financial affidavits submitted to the court revealed that respondent received monthly pension payments and social security benefits totaling $8130.  After his monthly expenses were deducted from this amount, he was left with a surplus of $2931.  Petitioner's affidavit revealed that every month she received $600 in rent and $1100 in monetary gifts.  After her living expenses were deducted, she was left with a deficit of $2068.

¶ 6      Both parties had little debt and few assets.  Respondent owned a vacation home in Wisconsin that he purchased for $22,000.  This home was purchased during the marriage.  He also owned two boats.  Petitioner bought one of the boats as a gift for respondent, spending between $4000 and $5000 for it.  Petitioner owned the home in which she and respondent lived during the marriage.  The fair market value of that home was $245,620, with an outstanding mortgage of $135,000.  Given the parties' circumstances, the court awarded petitioner temporary maintenance of $2099 per month.  These payments began on January 1, 2019.

¶ 7      At the hearing on the petition to dissolve the marriage, respondent, who was 63 years old and had difficulty hearing, testified that he is a retired disabled police officer.  When the parties met, petitioner, who had MS and used a wheelchair, was unemployed but in "great health."  Now, respondent described her health as "[p]retty poor," and he did not believe that she was able to work.  He "believe[d]" petitioner was "disabled."

¶ 8     After the parties married, petitioner contributed to the household expenses, using money she received from her ex-husband's pensions.  When petitioner's ex-husband passed away, respondent assumed more of the responsibility for paying the parties' expenses.  Although respondent could not say from where petitioner was receiving money, he speculated that "she must have a lot of money coming in."  He explained that petitioner was able to pay her bills, her substantial property taxes, and her car payment.

¶ 9     Petitioner, who was 58 years old, testified that she has an associate's degree and last worked over seven years ago.  She was employed as a home healthcare representative, earning $3000 per month plus a reimbursement of $300 for gas.  When the parties married, they talked about petitioner working.  Respondent told her that she did not have to work, as he "[would] always take care of [her]."  Petitioner relied on respondent's oral promise.

¶ 10    After the parties married, petitioner's health deteriorated.  She indicated that she is unable to work given her illnesses.[1]  Petitioner elaborated that she has secondary progressive MS, lupus, and lymphoma.  Because her MS has gotten worse, she now wears leg braces every day.  She is confined to a wheelchair and will soon be using the services of a home healthcare caregiver to shower.  Her lupus, which attacks the joints, causes her constant pain.  She takes strong medications, including morphine, to help alleviate the pain.  She also takes a chemotherapy drug twice a day to treat her lymphoma.  The chemotherapy drugs cause her to vomit often.  Although

---

[1] Respondent objected to petitioner's claim that she could not work because of her illnesses, as she was not qualified to make such an assessment.  The court allowed her to testify as to her belief, explaining that it would give her statements the appropriate weight.

petitioner applied for disability, her claim was denied. She has since retained an attorney to appeal that decision.

¶ 11    When the court dissolved the parties' marriage, it noted that respondent's yearly income was $97,560 and petitioner's was $29,268. It awarded petitioner sole exclusive possession of the marital home and ordered respondent to pay petitioner $500 per month for 22 months as her equitable share in the Wisconsin home.[2]

¶ 12    The court considered all of the proper factors in deciding whether to award petitioner maintenance. See 750 ILCS 5/504(a) (West 2018). The court found that no evidence corroborated petitioner's claim that her illnesses prevented her from working. The court observed that, although petitioner needed a wheelchair, which she had needed when the parties married, she was neatly dressed and well groomed. She also testified clearly and concisely and understood the questions posed to her. The court also noted that petitioner had been denied disability and that her only impairment to working was her wheelchair. Moreover, the court observed that respondent's promise to take care of petitioner forever was not memorialized.

¶ 13    Additionally, the court found petitioner's "income is shady," and her "credibility as to her finances is poor, at best." The court continued that petitioner's financial circumstances were "circumspect," noting that she "was not being honest and forthcoming with her finances." For instance, the court questioned from where petitioner received $1100 per month in monetary gifts and doubted that she drove over 1600 miles per month as she claimed in her financial affidavit. The court found that petitioner's "numbers don't add up." Given petitioner's lack of credibility, the short duration of the marriage, the fact that petitioner had at least $110,000 in equity in her

_____

[2] The parties stipulated that petitioner's house was her nonmarital property.

home, and she will receive $11,000 from respondent as her equity in the Wisconsin home, the court denied petitioner permanent maintenance, noting that the previously ordered award of $2099 in monthly maintenance would continue for 11 months.

¶ 14                                    II. ANALYSIS

¶ 15    At issue in this appeal is whether petitioner should have been awarded permanent maintenance. Because the trial court has the discretion to award maintenance, we will not disturb the trial court's maintenance award absent an abuse of discretion. *In re Marriage of Sturm*, 2012 IL App (4th) 110559, ¶ 3. A trial court abuses its discretion only if no reasonable person would adopt the trial court's view. *Id.*

¶ 16    When a party challenges a trial court's factual findings concerning maintenance, we will not reverse those findings unless they are against the manifest weight of the evidence. *Id.* Findings are against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the court's findings are unreasonable, arbitrary, and not based on any of the evidence. *In re Marriage of Nord*, 402 Ill. App. 3d 288, 294 (2010).

¶ 17    "Questions of witness credibility and conflicting evidence are matters for the trial [court] to resolve." *In re Marriage of Sturm*, 2012 IL App (4th) 110559, ¶ 6. "Because [the trial court] sees and hears the witnesses, [it] is in a position superior to a reviewing court for assessing their demeanor, judging their credibility, and weighing the evidence." *Id.*

¶ 18    Section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/504(a) (West 2018)) provides that a court may award maintenance upon consideration of "all relevant factors," including:

"(1) the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance as well as all financial obligations imposed on the parties as a result of the dissolution of marriage;

(2) the needs of each party;

(3) the realistic present and future earning capacity of each party;

(4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having forgone or delayed education, training, employment, or career opportunities due to the marriage;

5) any impairment of the realistic present and future earning capacity of the party against whom maintenance is sought;

(6) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment;

(6.1) the effect of any parental responsibility arrangements and its effect of a party's ability to seek or maintain employment;

(7) the standard of living established during the marriage;

(8) the duration of the marriage;

(9) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and the needs of each of the parties;

(10) all sources of public and private income including, without limitation, disability and retirement income;

(11) the tax consequences of each party;

(12) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse;

(13) any valid agreement between the parties; and

(14) any other factor that the court expressly finds to be just and equitable."

¶ 19    Although maintenance is designed to be temporary, providing a dependent spouse with some support until that spouse is financially independent, permanent maintenance is appropriate in some circumstances. *In re Marriage of Haas*, 215 Ill. App. 3d 959, 964 (1991). For example, " '[p]ermanent maintenance *** is appropriate where it is evident that the recipient spouse is either unemployable or employable only at an income that is substantially lower than the previous standard of living.' " *In re Marriage of Brankin*, 2012 IL App (2d) 110203, ¶ 9 (quoting *In re Marriage of Murphy*, 359 Ill. App. 3d 289, 303 (2005)).

¶ 20    With these principles in mind, we turn to the issue raised in this appeal. In doing so, we certainly are sympathetic to petitioner's poor health and her physical limitations. However, as noted, our function as a court of review is limited. In that capacity, we conclude that the trial court did not err.

¶ 21    At the crux of the trial court's decision was its assessment of petitioner's credibility. The court found that petitioner was not credible in that she was neither honest nor forthcoming about her financial situation. The court's credibility finding was not against the manifest weight of the evidence.

¶ 22    Moreover, given the trial court's findings, we are compelled to conclude that the court's decision to deny petitioner permanent maintenance was not an abuse of discretion. Petitioner was awarded more assets than respondent; nothing indicated that the parties lived a lavish lifestyle; the marriage lasted less than five years; and neither party was healthy. Although respondent allegedly

promised to always take care of petitioner, the court concluded that that promise was not valid. Respondent never testified that he made such a promise, and even if he had, it is difficult to conclude that respondent truly intended to take care of petitioner well after their relationship had soured, rather than just during the marriage.

¶ 23    Petitioner argues that she should have been awarded permanent maintenance, because both parties testified that she was disabled. We disagree. The fact that both parties *believed* that petitioner was disabled did not mean that the court had to accept that belief as fact. Moreover, respondent was disabled too. The court noted during trial that it would afford the proper weight to testimony that petitioner was disabled, noting that no evidence other than the parties' testimony was presented on that issue. See, *e.g.*, *Kraft Foods, Inc. v. Illinois Property Tax Appeal Board*, 2013 IL App (2d) 121031, ¶ 58 (rejecting proposition that trier of fact must accept unrebutted testimony); *Franciscan Communities, Inc. v. Hamer*, 2012 IL App (2d) 110431, ¶ 47 (trier of fact free to disbelieve any witness).

¶ 24    We also find untenable petitioner's claim that the trial court failed to give the proper weight to the fact that she was disabled when the parties married; that the marriage lasted less than five years; and that the parties' financial circumstances were vastly different. Putting aside the fact that the court was not required to give equal weight to the statutory factors (*In re Marriage of Stam*, 260 Ill. App. 3d 754, 756 (1994)), nothing indicated that the court failed to consider them. For instance, although the court mentioned that petitioner already needed a wheelchair when she married respondent, we view the comment as the acknowledgement that the wheelchair did not prevent her from working, as petitioner testified that she and respondent discussed whether she would work after the parties married. Similarly, we conclude that the court did not place too much weight on the fact that the parties' marriage lasted less than five years. Although the court

mentioned the length of the marriage, nothing indicated that the court placed undue emphasis on that factor. For the same reasons, we conclude that the court did not overlook the parties' allegedly disparate financial circumstances. The court noted that respondent's gross monthly income exceeded petitioner's. However, it found that the difference did not warrant awarding petitioner permanent maintenance, as, among other things, petitioner's assets far exceeded respondent's, and petitioner's assessment of her finances was suspect given her inflated expenses and the questionable source of some of her income.

¶ 25    When we consider the entirety of the trial court's decision, we conclude that the court did not improperly weigh the evidence in balancing all the relevant factors. The court's findings are not against the manifest weight of the evidence (see *Nord*, 402 Ill. App. 3d at 294), and the court did not abuse its discretion in denying petitioner permanent maintenance. See *Strum*, 2012 IL App (4th) 110559, ¶ 3.

¶ 26                                    III. CONCLUSION

¶ 27    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 28    Affirmed.