NOTICE

Decision filed 06/26/20. The text of this decision may be changed or corrected prior to the filing of a Petiﬁon for Rehearing or the disposition of the same.

2020 IL App (5th) 190064-U

NO. 5-19-0064

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| BRADLEY E. RIFE, | ) | Jackson County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 16-D-161 |
| | ) | |
| NANCY E. RIFE, | ) | Honorable |
| | ) | Michael A. Fiello, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's order awarding maintenance to Wife is affirmed where sufficient evidence was presented from which the trial court could conclude that an award of maintenance to Wife was appropriate and that it was inappropriate to apply the statutory guidelines for calculating maintenance. Furthermore, the trial court's determination that Husband's testimony was not credible was not against the manifest weight of the evidence.

¶ 2    Petitioner, Bradley Rife ("Husband"), appeals the trial court's order awarding maintenance to respondent, Nancy Rife ("Wife"), in the amount of $2000 per month, indefinitely. On appeal, Husband argues that the trial court's maintenance award was "arbitrary in light of a failure of proof" and that Wife failed to meet her burden of proof at

1

the maintenance hearing. Husband also argues that the trial court's determination that Husband was incredible was against the manifest weight of the evidence. For the following reasons, we affirm the trial court's award of maintenance to Wife.

¶ 3                                   I. BACKGROUND

¶ 4    Husband and Wife were married on December 31, 1981, in Tazewell County, Virginia. The parties had two children as a result of the marriage and adopted one child. All the children are now adults, with no disabilities. On September 9, 2016, Husband filed a petition for dissolution of marriage and a petition for temporary relief against Wife. Wife filed responses to each of Husband's petitions and requested that maintenance be established. Wife also filed a counterpetition for temporary relief. In her counterpetition, Wife alleged that she was incapable of employment due to "physical disability" and that Husband was Wife's primary source of income during the marriage. She requested that temporary maintenance be set.

¶ 5    On April 13, 2017, Wife filed a financial affidavit with the trial court. Wife's financial affidavit claimed that she had no income and her monthly expenses were $1376.90. The expenses Wife claimed included telephone, pet care, groceries, household supplies, toiletries, gasoline, car maintenance, doctor visits, medicine, clothing and "entertainment/dining out/hobbies." Wife's financial affidavit indicated that Husband paid the mortgage, electric, television, garbage removal, car payment, and life insurance policies. On December 27, 2017, Wife filed a second financial affidavit. Wife's claimed income and expenses in the December affidavit were the same as those listed in the April affidavit.

¶ 6    On May 11, 2017, the trial court held a hearing on Wife's request for temporary maintenance. At the time of the hearing, Husband had not filed a financial affidavit with the trial court.[1] The trial court's docket reflects that the trial court found Wife was entitled to temporary maintenance and set the amount at $300 per week. The trial court's docket also shows that the trial court ordered Husband to continue paying "the household expenses he has been paying as testified to." On June 5, 2017, the trial court entered a written order that required Husband to continue making payments on the mortgage for the parties' real estate; the parties' vehicle loans; the water, electric, refuse, and satellite bills; and the parties' life, homeowner, and vehicle insurance policies. The written order also directed Husband to pay Wife $300 per week in temporary maintenance.

¶ 7    On December 27, 2017, Husband filed his financial affidavit with the trial court. Husband's financial affidavit stated that he was self-employed at Rife Exteriors and also at Camping World RV Transport. Husband's affidavit indicated that he received $475 per month from a rental property and that a projected tax return was attached to the affidavit. The projected tax return estimated that Husband's total income for January 2017 to August 2017 was expected to be $23,964. Husband also claimed a deduction of $1300 per month for maintenance payments. As for his debts and expenses, Husband calculated his total monthly expenses and debt payments at $10,744. This amount, however, was incorrect. First, Husband listed the mortgage and car loan payments twice—once under monthly

___

[1]Although the trial court's docket indicates that testimony was heard, the report of proceedings from this hearing was not submitted as part of the record on appeal, there is no bystander's report.

3

expenses and again under his debts.[2] Second, Husband committed mathematical errors when totaling the amounts listed in his affidavit. After accounting for Husband's errors, his claimed monthly expenses and debt payments were $6094.

¶ 8     On July 23, 2018, the trial court held a full hearing on the issue of maintenance. At this hearing, the trial court heard the testimony of both Wife and Husband and received several exhibits into evidence. The exhibits introduced into evidence included Husband's financial affidavit, the parties' joint tax returns for 2010 to 2015, Husband's individual tax returns for 2016 and 2017, bank records for Rife Exteriors' business account from 2015 through March of 2017, and Husband's IRS 1099 forms for income earned in 2016.

¶ 9     At the time of the hearing, Wife was 58 years old and held a GED and cosmetology license. She also had experience managing a salon and attended a three-day training for giving tattoos. During the marriage, Wife worked in cosmetology, home health care, and floral designing. Wife claimed she was not able to work in these professions any longer because of several physical ailments which caused her to suffer daily pain in her neck, back, shoulders, and knees. Wife testified that she experienced spasms in her neck and has "upper back, mid-back and low back" issues. She had one knee replaced and testified that her other knee "stays swollen" and "is completely bone on bone." She also had torn rotator cuffs in her shoulders which had been repaired. Wife asserted that her injuries prevented her from standing, walking, or holding her arms in an upward position for extended periods of time without pain. If she sits for too long, she experiences spasms and has trouble

---

[2]At the full hearing on maintenance, discussed below, the parties stipulated that Husband had listed the mortgage and car loan payments twice.

4

holding her head up. Wife testified that she took pain medicine as needed as well as muscle relaxers, blood pressure, "a stomach pill, [and] a nerve pill."

¶ 10   As a result of her physical condition, Wife asserted that she could not work in cosmetology, home health care, or floral design and had not been employed for the "four or five years" prior to the maintenance hearing. She last worked as a hair stylist, but stopped because she fell and injured her back, hip, and shoulder. Wife affirmed that she could not work in cosmetology any longer because she was unable to keep her arms raised for extended periods of time. She also was not able to work in home health care because she is limited in the amount of weight she can lift and would be unable to move a patient. As for floral design, Wife stated she could not perform this line of work because she could not sit, and work with items in front of her, for long periods of time. Wife also testified that she had trouble with her own housework and indicated her back begins to spasm when doing simple tasks such as sweeping the floor.

¶ 11   Wife testified that her only source of income was a rental property which she expected to retain as part of the dissolution of marriage. She collected rent in the amount of $475 per month but was required to pay real estate taxes and insurance for the property. This rental income was the same income which Husband claimed on his financial affidavit.

¶ 12   Husband testified he was 53 years old and had two sources of income. He owned and operated a siding business, Rife Exteriors, and transported campers for Camping World. His 2016 individual tax return showed that Husband had a total income of $29,208 and gross receipts of $654,425 for Rife Exteriors and $52,824 for Camping World. His 2016 IRS 1099 forms exhibited that Husband received $52,823.58 in "nonemployee

compensation" from Camping World RV transport, and a total of $664,596.90 in compensation from Rife Exteriors. The Rife Exteriors' 2016 bank records revealed total deposits of $743,094.62 into the Rife Exteriors account for the year. In 2017, Husband's individual tax return showed that Husband had a total income of $21,743, and gross receipts of $118,266 for Rife Exteriors, and $50,150 for Camping World. The 2017 tax return also stated that Husband made $14,346 in "alimony payments." During January through March of 2017, the Rife Exteriors' bank records revealed the following deposits: (1) January - $31,624.40; (2) February - $17,756.50; and (3) March - $24,313.75. Husband claimed that many of the 2017 bank deposits were for work that had been completed in 2016. Husband also deposited all money earned from Rife Exteriors and Camping World into the Rife Exteriors business account. Husband testified that he had been transporting more campers than usual "over the past couple of years," and that business at Rife Exteriors had been very slow "over the last year and a half." He was not able to spend as much time with Rife Exteriors, however, because he had been traveling to Bristol, Virginia, to care for his elderly parents for approximately the past two years. Husband testified that he traveled to Virginia to cook meals, go to the store, and take his parents to doctor appointments. He made these trips after the first of each month and intended to return to Virginia every week to 10 days. Husband testified that he tried to arrange these trips to Virginia when he was delivering campers.

¶ 13    As for Husband's expenses and debts, other than the expenses listed in his financial affidavit correctly calculated at $6094 per month, Husband did not produce any documents reflecting his expenses or stating that he was not current on any payments he was required

6

to make. Husband claimed that he used loans to help him live and make expenses. For example, Husband testified that the $15,000 "business, personal loan" listed in his financial affidavit was used to pay off an old loan of approximately $8000, and the remaining balance was used to make payments toward the parties' cars, house, and insurance. Husband also testified that he would expense out household debts and living expenses in his business. He provided no evidence as to the extent this was done and confirmed that he would "give all of this to the CPA to figure out at the end of the year." When Husband was questioned about the income amounts found in his tax returns, he repeatedly deferred to his accountant, who was not called as a witness to testify.

¶ 14    At the conclusion of the temporary maintenance hearing, the parties indicated that they were working toward a settlement agreement but still needed to address the issue of property division. When the parties did not present the trial court with an agreement, the trial court set the case for a hearing on all remaining issues for November 13, 2018. On that date, the parties presented the trial court with a "Marital Settlement Agreement" and a "Side Agreement," but were unable to resolve the issue of maintenance. The trial court took the maintenance issue under advisement.

¶ 15    On November 26, 2018, the trial court entered its Judgment of Dissolution of Marriage, which incorporated the "Marital Settlement Agreement" and the "Side Agreement." The trial court also entered a separate "Maintenance Order," awarding Wife the amount of $2000 per month as maintenance, for an indefinite term. In the "Maintenance Order," the trial court found that Wife was entitled to maintenance because she "[had] limited education, no current employment, impairments which limit her employability, and

[was] 58 years old ***." The trial court also determined that applying the statutory guidelines for calculating maintenance was inappropriate. The trial court based this finding on its conclusion that Husband's testimony, and his financial affidavit, were not credible and that the tax returns submitted into evidence were not reliable for determining Husband's actual income. The trial court found that Husband's income was "unknown, but it is more than he claims." The trial court referenced Husband's testimony that "some of his non-business living expenses were expensed out in the business." The trial court noted that no evidence was presented as to what extent these living expenses were "expensed out in the business." The trial court also considered the fact that the mortgage payment, which alone was $19,020 per year, was generally equal to, or greater than, the profits from Rife Exteriors. The trial court surmised that, "[w]ithout reliable income figures, it would be inappropriate to use the statutory guidelines for calculating maintenance."

¶ 16    In setting non-guideline maintenance, the trial court made a finding that Wife's total monthly expenses following the dissolution of marriage were $1976.90. Wife's financial affidavit indicated that her monthly expenses were $1376.90. As part of the "Marital Settlement Agreement," Wife was to pay $600 toward the mortgage for the parties' real estate, until it was sold. After the real estate was sold, the trial court concluded that Wife would continue to have housing expenses. The trial court also found that Husband had been able to make the current maintenance payments. Therefore, the trial court set maintenance at $2000 per month and ordered that the duration of maintenance be "indefinite" because the parties had been married for over 34 years.

¶ 17    Husband subsequently filed a motion to reconsider, asking the trial court to "reconsider and modify" the maintenance award. In Husband's motion, he alleged that the trial court's maintenance award was against the manifest weight of the evidence and that Husband's income did not justify the amount awarded. After hearing arguments on Husband's motion, the trial court reviewed its award of maintenance and found no reason to modify the award. The trial court then denied Husband's motion. This appeal follows.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, Husband raises several challenges to the trial court's award of maintenance to Wife in the amount of $2000 per month, indefinitely. First, Husband claims that the trial court had insufficient evidence to determine that awarding maintenance was appropriate. Husband also argues that the trial court had insufficient evidence to conclude that application of the statutory guidelines for calculating maintenance was inappropriate. Next, Husband asserts that Wife had the burden of proof to show she was entitled to a maintenance award, and that she failed to carry her burden of proof at the maintenance hearing. Finally, Husband contends that the trial court's determination that Husband was incredible was against the manifest weight of the evidence. We disagree.

¶ 20    Generally, the trial court's maintenance award is presumed correct. *In re Marriage of Brill*, 2017 IL App (2d) 160604, ¶ 26. The propriety, amount, and duration of maintenance are matters within the discretion of the trial court, and a reviewing court will not reverse the trial court's decision on any of these matters absent an abuse of discretion. *In re Marriage of Hamilton*, 2019 IL App (5th) 170295, ¶ 102. A trial court abuses its

9

discretion where its findings are arbitrary or fanciful, or where no reasonable person would agree with the trial court's position. *Brill*, 2017 IL App (2d) 160604, ¶ 26.

¶ 21    In determining whether maintenance is appropriate, the trial court must consider all relevant factors set forth in 750 ILCS 5/504(a)(1)-(14) (West Supp. 2017). *Hamilton*, 2019 IL App (5th) 170295, ¶ 103. 750 ILCS 5/504(a) lists the following factors for the trial court's consideration: (1) the income and property of each party, including marital property apportioned and nonmarital property assigned to the party seeking maintenance as well as all financial obligations imposed on the parties as a result of the dissolution of marriage; (2) the needs of each party; (3) the realistic present and future earning capacity of each party; (4) any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having forgone or delayed education, training, employment, or career opportunities due to the marriage; (5) any impairment of the realistic present or future earning capacity of the party against whom maintenance is sought; (6) the time necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment, and whether that party is able to support himself or herself through appropriate employment or any parental responsibility arrangements and its effect on the party seeking employment; (7) the standard of living established during the marriage; (8) the duration of the marriage; (9) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and the needs of each of the parties; (10) all sources of public and private income including, without limitation, disability and retirement income; (11) the tax consequences of the property division upon the respective economic

10

circumstances of the parties; (12) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse; (13) any valid agreement of the parties; and (14) any other factor that the court expressly finds to be just and equitable. 750 ILCS 5/504(a)(1)-(14) (West Supp. 2017). While the trial court must consider all relevant factors, the trial court need not give each factor equal weight. *Hamilton*, 2019 IL App (5th) 170295, ¶ 103.

¶ 22    Considering the statutory factors in light of the record below, the trial court's findings were not against the manifest weight of the evidence. The trial court had more than sufficient evidence to determine that Wife should receive maintenance. Wife's only source of income was a rental unit which produced $475 per month before paying real estate taxes and insurance. While the rental income was not listed in her financial affidavit, she testified that she would receive that income following the dissolution of marriage. Wife also testified to several physical injuries which prevented her from working in the various occupations she previously held. The evidence revealed that Wife had not been employed for the "four or five" years prior to the maintenance hearing, and Husband was Wife's primary source of income during this time. Her education was also limited to a GED, a cosmetology license, and a three-day training for tattoos. At age 58, it was unlikely that any further education would increase her employability. As for Wife's needs, her financial affidavit listed her monthly expenses and debt at $1376.90. The "Marital Settlement Agreement," executed after the temporary maintenance hearing, required Wife to pay $600 per month toward the mortgage on the parties' residence until it was sold. This additional $600 placed Wife's needs at $1976.90. The record below also indicated that Husband was

not under any disability and could continue working and earning income. In fact, Husband had two potential sources of income—Rife Exteriors and Camping World. And the potential decrease in Husband's earnings from his two businesses over time does not negate the propriety of maintenance in light of the current disparity in the parties' incomes. *Hamilton*, 2019 IL App (5th) 170295, ¶ 106. Therefore, the trial court did not abuse its discretion in concluding that Wife was entitled to a maintenance award.

¶ 23    Once the trial court concluded that maintenance was appropriate, the trial court had to determine the amount and duration of maintenance. *Hamilton*, 2019 IL App (5th) 170295, ¶ 108. In doing so, the trial court was obligated to consider the statutory guidelines as they related to both the amount and duration of the maintenance; although, "the [trial] court [was] not required to order maintenance in accordance with the statutory guidelines." *Hamilton*, 2019 IL App (5th) 170295, ¶ 108.

¶ 24    The statutory guidelines provide litigants and the courts with a simple formula for calculating maintenance. Generally, if the parties' combined gross income is less than $500,000, maintenance is calculated by "taking 30% of the payor's gross annual income minus 20% of the payee's gross annual income." 750 ILCS 5/504(b-1)(1)(A) (West Supp. 2017). To use this formula, however, litigants and the courts need reliable and credible evidence. As this case demonstrates, Husband's testimony, financial affidavit, and tax returns did not provide an accurate depiction of Husband's income and were not reliable.

¶ 25    Husband's claimed monthly expenses and debts of $6094, or $73,128 per year, were drastically more than the total income claimed on his tax returns, *i.e.*, $21,743 for the year of 2017. As the trial court observed, Husband affirmed that many of his debts and

12

household expenses were "expensed out in the business." No evidence was provided as to what living expenses and debts, or how much of these, were "expensed out" in Husband's business. He claimed everything went to his accountant "to figure out" at the end of the year, but Husband did not call his accountant as a witness. Moreover, there was no evidence that Husband had filed for bankruptcy or defaulted on a loan. The parties' home was not in foreclosure and their cars had not been repossessed. Therefore, the trial court concluded that Husband's testimony, financial affidavit, and tax returns did not provide an accurate picture of Husband's financial situation. Given the evidence before it, and the lack of a clear picture detailing Husband's income and expenses, the trial court determined that it could not apply the statutory guidelines for calculating maintenance. We agree with the trial court, and its decision not to apply the statutory guidelines was not an abuse of discretion.

¶ 26    Once the trial court made its decision to deviate from the guidelines, the trial court must "state in its findings the amount of maintenance (*if determinable*) *** that would have been required under the guidelines and the reasoning for any variance from the guidelines." (Emphasis added.) 750 ILCS 5/504(b-2)(2) (West Supp. 2017). Implicit within the statute is a recognition that the calculation for a maintenance award under the guidelines might not always be determinable. Under the guidelines, maintenance is determined by applying the parties' gross annual income to the statutory formula. If gross annual income cannot be determined, maintenance cannot be determined in accordance with the guidelines. Therefore, a trial court may properly exercise its discretion and award non-guideline maintenance where the gross annual income of one, or both, of the parties is

13

undeterminable. In setting non-guideline maintenance in this case, the trial court explained that without reliable income figures, it would be inappropriate to apply the statutory guidelines. The trial court stated that it was applying non-guideline maintenance in the amount of $2000 because "[Husband] ha[d] been able to make the current maintenance payments and *** [Wife] ha[d] monthly expenses of $1,976.90." Under the facts of this case, we find that the trial court did not abuse its discretion in departing from the statutory guidelines and awarding Wife non-guideline maintenance.

¶ 27    Husband next contends that Wife failed to meet her burden of proof in seeking an award of maintenance. Generally, the party seeking maintenance bears the burden of proof to show the necessity for maintenance. See *In re Marriage of Gunn*, 233 Ill. App. 3d 165, 175 (1992) (spouse seeking permanent or long-term maintenance bears the burden to show the necessity for such maintenance). We have already discussed at length the Wife's evidence regarding her income, lack of employment, education, and physical injuries that impacted her employability. Her financial affidavit and the "Marital Settlement Agreement" provided that her needs were at least $1936. Thus, the trial court had sufficient evidence before it to determine that awarding Wife non-guideline maintenance was appropriate. We find that Wife did not fail to meet her burden of proof regarding the necessity for maintenance.

¶ 28    Finally, Husband argues that the trial court's determination that his testimony, financial affidavit, and tax returns were not credible was against the manifest weight of the evidence. A trial court's findings are against the manifest weight of the evidence where the opposite conclusion is clear, or where the trial court's findings are unreasonable, arbitrary,

14

and not based on any of the evidence. *In re Marriage of Nord*, 402 Ill. App. 3d 288, 294 (2010). Questions of witness credibility are matters for the trial court to resolve. *In re Marriage of Sturm*, 2012 IL App (4th) 110559, ¶ 6. As the trier of fact, the trial court is in a superior position to assess the witnesses' demeanor, judge their credibility, and weigh the evidence because the trial court sees and hears witnesses testify. *In re Marriage of Sturm*, 2012 IL App (4th) 110559, ¶ 6. Husband makes several arguments as to why the trial court's credibility determination is erroneous, but they need not be repeated here. Husband was represented by counsel throughout these proceedings and had the opportunity to provide the trial court with clear and concise financial information and could have called his accountant to testify. The trial court had the opportunity to view Husband's live testimony and weigh that testimony, along with the financial information available, much of which was confusing. Considering the record below and the trial court's findings, we find no basis in the record to conclude that the trial court's credibility determination was against the manifest weight of the evidence.

¶ 29 For the foregoing reasons, the trial court's order awarding the nonstatutory amount of maintenance is affirmed.

¶ 30 Affirmed.