NOTICE

Decision filed 09/04/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230157-U

NO. 5-23-0157

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| MICHAEL ROSENBERGER, | ) | Macon County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 18-D-206 |
| | ) | |
| DAWN ROSENBERGER, | ) | Honorable |
| | ) | Phoebe S. Bowers, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The trial court's decision is affirmed where the court's valuation of marital property was not against the manifest weight of the evidence, division of marital property was not an abuse of discretion, calculation of Husband's annual gross income was not against the manifest weight of the evidence, order directing Wife to submit to quarterly drug testing was not against the manifest weight of the evidence, and where the court did not abuse its discretion in denying the respondent's request for attorney fees.

¶ 2     This appeal concerns the dissolution of marriage action between the petitioner, Michael Rosenberger, and the respondent, Dawn Rosenberger. On appeal, respondent raises five issues for this court's review: (1) whether the trial court's valuation of petitioner's bank accounts and 2015 Dodge 2500 truck was against the manifest weight of the evidence, (2) whether the court erred by allocating marital debt, (3) whether the court erred by calculating petitioner's annual gross income

for purposes of awarding maintenance, (4) whether the court erred by ordering respondent to submit to a quarterly drug test, and (5) whether the court erred by denying respondent's request for attorney fees. For the following reasons, we affirm.

¶ 3                                 I. BACKGROUND

¶ 4      The record in this case is extensive. We limit our recitation to those facts relevant to our disposition of this appeal. We will recite additional facts in the analysis section as needed to address the specific arguments of the parties. Because the parties share a last name, we will refer to them by their first names throughout this decision.

¶ 5      Michael and Dawn were married on August 8, 1998. They had two biological children, both of whom are emancipated. A third child was born to Dawn and is not the biological child of Michael but is treated as such for purposes of this matter. On July 13, 2018, Michael filed a petition for dissolution of the marriage. Dawn filed a response and counterpetition on January 15, 2019.

¶ 6      Prior to trial, the parties filed numerous motions, amended petitions, and agreed orders. During this time, Dawn was represented by attorney Jonathan Erickson. On October 3, 2019, Dawn filed a "Petition for Interim Attorney's Fees" requesting that Michael be ordered to pay $4000 in attorney fees owed and an additional $3000 as a retainer for Mr. Erickson. In response, Michael requested the trial court order him to pay $2500 towards Dawn's attorney fees. On October 16, 2019, the trial court granted Dawn's petition and ordered Michael to pay $7000. Following additional pretrial matters, Mr. Erickson moved to withdraw as Dawn's counsel. On August 2, 2021, the court granted Mr. Erickson's motion.

¶ 7      On December 2, 2021, attorney Guy S.R. Casey entered his appearance on behalf of Dawn. On the same date, he filed a motion for continuance requesting that the trial, which was set for the next day, be continued until January. The trial court denied the motion in part, allowed Michael to

2

begin his case-in-chief on the previously scheduled trial date of December 3, 2021, and allowed Dawn to cross-examine Michael's witnesses on a later trial date in January.

¶ 8　Trial in this cause commenced on December 3, 2021, and continued on January 21, 2022, April 21, 2022, and May 16, 2022. On December 3, 2021, Michael began his case-in-chief and testified on his own behalf. Michael testified that he and Dawn had three children, only one of whom, A.R., was still a minor. Although A.R. was not his biological child, Michael testified he had "a father/daughter relationship" with A.R. At the time he filed for divorce, A.R. was living with him, although she saw Dawn regularly. In September or October 2020, A.R. moved in with Dawn. Since then, Michael saw A.R. every other weekend. While living with Dawn, A.R. received "A" grades.

¶ 9　In 2007, Michael began working for a construction company, Clayco, Inc. Michael testified that, based on his W-2s, his gross income in the years 2018, 2019, and 2020 totaled $178,113.88, $177,037.52, and $195,730.62, respectively. Michael's most current financial affidavit, dated November 1, 2021, was admitted as Respondent's Exhibit 1. In his financial affidavit, Michael reported that he earned $19,113.78 per month. Michael's October 29, 2021, pay stub was admitted into evidence as Respondent's Exhibit 2. Starting on September 19, 2019, Michael began paying Dawn $1652 per month in voluntary maintenance. At the time of the trial, Michael worked in Elk Grove Village, Illinois, and returned home every other weekend. Michael testified that throughout the marriage, Dawn worked "[p]eriodically" and primarily stayed home to raise the children.

¶ 10　Michael testified regarding the multiple vehicles and parcels of real estate owned by the parties. He testified the parties owned three parcels of real estate: 3329 Ferris Drive in Decatur, Illinois; 2131 Hendrix Street in Decatur, Illinois; and 70 acres of recreational property in Fayette County, Illinois (referred to as the "Ramsey" property). In his financial affidavit, Michael reported

3

that the Ferris Drive property was worth $126,000 with a $131,590 mortgage, the Hendrix Street property was worth $60,000 with a $32,444 mortgage, and that the Ramsey property was worth $210,000 with a $131,590 mortgage.

¶ 11    Relevant to this appeal, Michael testified that he drove a 2015 Dodge 2500 diesel truck. The truck had 281,000 miles on it, and it did not have a functioning heater. On direct examination, Michael testified that this truck had a $19,600 trade-in value based on an estimate he received from a car dealership. On cross-examination, Dawn's attorney presented a valuation from the National Automobile Dealers Association (NADA). The NADA valuation showed that a 2015 Dodge 2500 truck with a diesel engine and 281,000 miles was valued at $41,150 "clean retail," $36,725 "clean trade-in," $35,225 "average trade-in," and $33,400 "rough trade-in." According to a list of expenses prepared by Michael, which was admitted as an exhibit, he paid $780 per month toward the debt owed for the truck.

¶ 12    Michael testified the parties separated in 2017. He further testified that Dawn moved into the house on Hendrix Street while he continued to occupy the marital residence on Ferris Drive. According to Michael, following the separation, he continued to pay certain expenses for Dawn and the children without contribution from Dawn. He testified that he paid the mortgage on the Hendrix Street property, the mortgage and tax payments on the Ramsey property, the children's cell phones, some of A.R.'s extracurricular activities, and A.R.'s school fees. Lastly, Michael testified that he and Dawn did not share any joint bank accounts; the only accounts he had were in his own name. In his financial affidavit, Michael reported the value of his checking account was $10,081.57 and the value of his savings account was $7001.27.

¶ 13    On April 21, 2022, on the third half-day of the trial, Dawn testified. Dawn provided additional information regarding the parties' marital history. Two years after the parties married,

4

Dawn graduated college with a bachelor's degree in education. A few months later, the parties' first child was born. At this time, Michael was working and still attending college. The parties agreed that Dawn would stay home to care for the child and Michael would work. This arrangement continued after the birth of the parties' second child.

¶ 14 During the parties' marriage, Dawn was a "full-time housewife," taking care of the children and managing the couple's finances. Dawn occasionally worked outside of the home, but she never worked a full-time job for more than a year and never earned more than minimum wage. Michael's income provided the family with a high standard of living. According to Dawn, she was able to "purchase whatever [she] wanted to purchase," and the family took multiple vacations each year.

¶ 15 In January 2018, Dawn began working as a teacher, earning approximately $26,000 per year. She resigned from this position in September 2018 after photos were posted on Facebook of her smoking an illegal substance. Dawn acknowledged that, at that time, she had issues with drug addiction. Dawn testified that shortly after she resigned from her teaching position, she enrolled in an inpatient drug rehabilitation program. Dawn completed the rehabilitation program in October 2018. Dawn also stated that she relapsed four times since she completed inpatient rehabilitation. Dawn further admitted that the last time she used methamphetamine was in mid-March of 2022. She stated that despite the recent relapse, she "ha[d] the drug situation under control." Dawn stated she never used drugs around the children.

¶ 16 Dawn further testified that she had not worked since she resigned as a teacher, although she looked for employment and had job interviews. According to Dawn, employers were unwilling to hire her because of the photographs of her smoking an illegal substance. Dawn also stated it was difficult to obtain employment because her work schedule was dependent on A.R.'s school schedule as she was responsible for driving A.R. to and from school. Dawn's financial affidavit,

5

dated January 19, 2022, was admitted into evidence. In the affidavit, Dawn reported that the Hendrix Street property was worth $42,000 with a $32,339.29 mortgage, that the Ferris Drive property was worth $152,000 with a $131,090 mortgage, and the Ramsey property was worth $210,000 with a $65,935.91 mortgage.

¶ 17    Dawn testified as to the marital debts which were listed on her financial affidavit. She testified that each of the Hendrix Street property, the Ferris Drive property, and the Ramsey property were subject to a mortgage. Dawn also testified that she had three "family expenses" credit card debts that were owed at the time she and Michael separated. These "family expenses" were identified in Dawn's financial affidavit as a $14,130 debt to Chase Bank, a $6835.18 debt to Citibank, and a $6002.75 debt to Barclay. Dawn's financial affidavit included an additional debt page, which showed she owed $5974 in student loans, $448 for medical bills, $5000 as a loan against a life insurance policy to pay Mr. Casey's retainer, $7753.81 to Mr. Erickson for prior legal services, an amount to be determined for Mr. Casey's current legal services, and $8921.28 to her mother for daily living expenses. Dawn asserted she did not have any ability to pay Mr. Erickson's fees, to pay Mr. Casey's fees, or to reimburse her mother for the expenses paid.

¶ 18    Also on April 21, 2022, Michael was recalled as witness. He testified that he received a work bonus in the amount of $32,700 after taxes. He further stated that money was "in the account."

¶ 19    On May 9, 2022, Dawn filed a petition for contribution to fees and costs. In her petition, she reported that Mr. Erickson received $10,000 in attorney fees for services previously performed, $3000 by Dawn and $7000 by Michael pursuant to a previous order of the court. Dawn also reported that she paid Mr. Casey a $5000 retainer. As of the date of the petition, Mr. Erickson was still owed $7753.81 and Mr. Casey was owed $15,355. Dawn's petition requested that Michael

6

pay the amount owed to Mr. Erickson in full, and for Michael to make contribution payments to Mr. Casey for the amount owed and all subsequent fees and costs. During a hearing on the petition, Michael stipulated to the amounts owed to Mr. Erickson and that the hourly rates were reasonable; however, he disagreed that he should be responsible for payment. Dawn testified that she had no way to pay the fees without liquidating assets she may be awarded.

¶ 20     On September 22, 2022, the court entered an order granting a judgment of dissolution of marriage, allocating marital property, parental responsibilities, parenting time, and awarding maintenance and child support (the Order). For purposes of allocating marital property and awarding maintenance and child support, the court found that Michael's gross monthly income was $19,113.78. The court found that Dawn had not worked since September 2018, but that she had the ability to work. The court imputed an annual income to Dawn of $24,960, or $2080 per month.

¶ 21     Relevant to this appeal, the trial court awarded Michael his 2015 Dodge 2500 valued at $12,895, explaining that was the value minus the debt owed. The court ordered the parties' 2013 van to be sold with the proceeds divided equally. Ultimately, the court ordered Michael to pay Dawn $14,773, which was one-half of the approximate value of the parties' vehicles, trailers, tractors, and boat that he was awarded minus one-half of the value of Dawn's vehicle.

¶ 22     Regarding the marital debt, the Order directed Michael to pay $42,499.96 of reported marital debt consisting of the Barclays credit card debt ($13,346.50) and the Discover credit card debt ($29,153.46). The trial court ordered Dawn to pay her medical bills in the sum of $448, the Country Finance Life Insurance loan in the sum of $5000, the Chase credit card in the sum of $14,130, the Citibank judgment in the sum of $6835, the Barclay judgment in the sum of $6002.75, and any amount owed to her mother, if truly owed.

7

¶ 23    The trial court's order included:

> "As of 11/1/2021, according to Husband's Financial Affidavit, he possessed approximately
> $17,000 in a checking and savings account at Heartland Bank & Trust. According to Wife's
> Financial Affidavit dated 1/19/2022, Wife possessed a negative balance in her combined
> checking and savings accounts. Husband shall pay Wife the sum of $6,900 as a distribution
> of the parties' bank accounts [equaling half the value of the bank accounts ($8,500) less
> $1,600 Wife was ordered to pay in a previous paragraph]. The sum shall be paid to Wife
> within the next thirty (30) days."

¶ 24    The trial court ordered Michael to pay $57,750 in retroactive maintenance for years 2019,

2020, and 2021 and further ordered him to pay $3811 per month in maintenance for 15.93 years.

The court further ordered Michael to pay child support.

¶ 25    In awarding parenting time, the trial court noted that A.R. "has a good relationship with

both parents and wants to spend time with both of them." The court awarded Dawn the majority

of parenting time. The Order includes:

> "Husband has valid concerns about Wife's past and current drug use. Wife testified in
> Court that she used drugs, particularly Methamphetamine, within the last thirty days of
> April 21, 2022. Husband requests that Wife submit to a hair follicle test on a quarterly basis
> to ensure he is aware of her drug use, if any. The Court finds this is a reasonable request
> and orders Wife to submit to a hair follicle test each quarter at her own expense and to
> provide the results to Husband within seven days."

The Order states "[i]f Husband's work schedule were different and he did not have to travel during

the week, it should be noted that the Court would award the majority of the parenting time to

Husband, considering Wife's recent drug use and past history of drug use."

¶ 26    Finally, the trial court denied Dawn's request for contribution toward her attorney fees. In

reaching that decision, the court stated: "Wife is asking for Husband to pay the astronomical sum

of $31,190.06 in addition to the $7,000 he has already paid Mr. Erickson." The court noted it

considered the property received by the parties, their incomes, and their financial obligations. The

court further noted that Dawn was going to receive $4917 per month in child support and

maintenance as well as "an additional arrearage payment" and "a substantial amount of marital

8

property." The court also noted that Dawn had the ability to work at least a full-time minimum wage job, but she chose not to. The court opined the case was not overly complicated or difficult, as the parties did not have an overwhelming amount of assets or liabilities, neither owned businesses or were self-employed, and many of the issues involving the children had already been resolved. The court stated it understood Mr. Casey was the second attorney on the case and had to review the file and get prepared but concluded: "Husband should not be responsible for Mr. Casey's unpreparedness or Mr. Erickson's withdrawal from the case."

¶ 27 On October 24, 2022, Dawn filed a posttrial motion arguing for reconsideration and modification of certain findings and orders made within the court's September 22, 2022, Order. A hearing on the motion was held on December 20, 2022. Dawn argued that the court misconstrued the evidence and facts, as well as the applicable statutes and law in relation thereto. Relevant to this appeal, Dawn argued the valuation of the 2015 Dodge 2500 was erroneous because her NADA valuation was based upon the high mileage and condition of the vehicle. Dawn further argued the allocation of marital debt, including credit card debt, was erroneous because Michael testified that indebtedness consisted of employment expenses. Dawn also argued that during the pendency of the trial, Michael received an additional $33,000 net bonus which was placed in his savings account, half of which should be awarded to Dawn. Further, Dawn argued Michael should be ordered to pay all existing marital indebtedness. Dawn also argued that the court's order that she submit to drug testing on a quarterly basis was contrary to law and constituted an abuse of discretion. Lastly, Dawn argued the court misconstrued the evidence and the law in relation to her request for Michael to pay her outstanding attorney fees. In response, Michael argued that the court did not misconstrue evidence or abuse its discretion.

¶ 28  On February 10, 2023, the court entered an order amending and modifying its September 22, 2022, Order. The amended order clarified matters not at dispute on appeal and stated "all previous orders not herein or otherwise previously modified shall remain in full force and effect."

¶ 29  On March 13, 2023, Dawn filed her notice of appeal.[1]

¶ 30                    II. ANALYSIS

¶ 31  On appeal, Dawn argues the trial court incorrectly valued certain marital property, improperly divided marital debt, and miscalculated Michael's annual income for maintenance purposes. Further, Dawn challenges the trial court's order requiring her to submit to quarterly drug testing. Lastly, Dawn argues the trial court erred by denying her request for attorney fees. For the reasons that follow, we disagree and affirm.

¶ 32              A. Valuation of Marital Property

¶ 33  We first address Dawn's argument that the valuation of marital assets was against the manifest weight of the evidence. Specifically, Dawn argues the trial court improperly valued Michael's bank accounts and his 2015 Dodge 2500 truck. We disagree.

¶ 34  To divide marital property under section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Act), the court must first determine the value of such property. *In re Marriage of Cutler*, 334 Ill. App. 3d 731, 736 (2002). Section 503(f) of the Act provides that the trial court, "in determining the value of the marital and non-marital property for purposes of dividing the property, has the discretion to use the date of the trial or such other date as agreed upon by the parties, or ordered by the court within its discretion, for purposes of determining the value of assets or property." 750 ILCS 5/503(f) (West 2020). The valuation of marital property is generally a factual

---

[1]The trial court's written judgment of dissolution of marriage was entered August 28, 2023. As such, Dawn's notice of appeal is deemed filed as of that date. See Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017) ("A notice of appeal filed after the court announces a decision, but before the entry of the judgment or order, is treated as filed on the date of and after the entry of the judgment or order.").

10

question, which will not be reversed unless it is against the manifest weight of the evidence. *In re Marriage of Hubbs*, 363 Ill. App. 3d 696, 700 (2006). A decision is against the manifest weight of the evidence where the opposite conclusion is clearly apparent or where the trial court's findings are unreasonable, arbitrary, and not based on the evidence. *In re Marriage of Igene*, 2015 IL App (1st) 140344, ¶ 18.

¶ 35    "When a party challenges a trial court's bench-trial ruling, we defer to the trial court's factual findings unless they are contrary to the manifest weight of the evidence." *Nokomis Quarry Co. v. Dietl*, 333 Ill. App. 3d 480, 484 (2002). When applying this standard of review, we give great deference to the trial court's credibility determinations, and we will not substitute our judgment for that of the circuit court " 'because the fact finder is in the best position to evaluate the conduct and demeanor of the witnesses.' " *Staes & Scallan, P.C. v. Orlich*, 2012 IL App (1st) 112974, ¶ 35 (quoting *Samour, Inc. v. Board of Election Commissioners*, 224 Ill. 2d 530, 548 (2007)). "A factual finding is against the manifest weight of the evidence when the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based in evidence." *Samour*, 224 Ill. 2d at 544. The trial court's findings and judgment will not be disturbed "if there is any evidence in the record to support such findings." *Brown v. Zimmerman*, 18 Ill. 2d 94, 102 (1959).

¶ 36    First, Dawn contends that the trial court undervalued Michael's bank accounts. In his financial affidavit, dated November 1, 2021, Michael valued his checking account at $10,081.57 and his savings account at $7001.27. The trial court, in its September 22, 2022, Order, held:

> "As of 11/1/21, according to Husband's Financial Affidavit, he possessed approximately $17,000 in a checking and savings account at Heartland Bank & Trust. According to Wife's Financial Affidavit dated 1/19/22, Wife possessed a negative balance in her combined checking and savings accounts. Husband shall pay Wife the sum of $6,900 as a distribution of the parties' bank accounts subtracting the one-half of the mediation fee and Guardian ad Litem fee discussed in the previous paragraph."

11

On appeal, Dawn argues Michael's bank accounts were undervalued, because during the third day of trial (April 21, 2022), Michael acknowledged he received a bonus check from his employer, which after deductions, totaled $32,700. As such, Dawn argues Michael's financial affidavit was no longer accurate and the value of his accounts should have been increased by $32,700.

¶ 37 The court valued Michael's bank accounts based on the date of his financial affidavit (November 1, 2021) and the date that document was properly entered into evidence (December 3, 2021). As stated above, this cause was set for trial on December 3, 2021. Michael testified to the accuracy of his financial affidavit on that date. The court allowed Mr. Casey to cross-examine Michael at a later date due to Mr. Casey's recent entry of appearance on Dawn's behalf. Also noted above, the trial commenced on December 3, 2021, and continued January 21, 2022, April 21, 2022, and May 16, 2022. If not for the delay caused by Mr. Casey's appearance just before trial, Michael's 2022 bonus would likely not even be at issue.

¶ 38 At the December 20, 2022, hearing on Dawn's posttrial motion, the court reasoned "this was a trial that took six months. It was four half-day trials. I did the best I could with what you both gave me. I divided the marital property and the debts as equitably as I thought was appropriate in this situation. I used the figures that you gave me." As evidenced by the court's September 22, 2022, Order, the court chose to value the parties' bank accounts as of the dates of their financial affidavits. Based on the record before us, we cannot find the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based on evidence. As such, we cannot find that the court's valuation of the bank accounts was against the manifest weight of the evidence.

¶ 39 Next, Dawn contends that the trial court erred in valuing Michael's 2015 Dodge 2500 truck. In its Order, the trial court valued the vehicle at $12,895 and awarded the vehicle to Michael. The court rejected Dawn's proposed value of $38,950 based on the NADA valuation. As stated in the

Order, the trial court arrived at this value by subtracting the debt owed ($6752) from the value of the vehicle ($19,647). The Order expressly stated that Dawn's proposed valuation of the vehicle did not take into account the high mileage on the vehicle or the fact that the heat did not work. At the December 20, 2022, hearing on Dawn's posttrial motion, the trial court expressly stated: "I found the husband's evidence more credible as to the value of the vehicle." Consistent with the valuation of the bank accounts, the court chose to value Michael's vehicle at or near the time of his most recent financial affidavit. Based on the record before us and the court's reasoned order, we cannot find that the trial court's decision on the value of the 2015 Dodge 2500 truck was against the manifest weight of the evidence.

¶ 40                                B. Marital Property Division

¶ 41    Dawn next argues that the trial court erred in its division of the marital property of the parties. Specifically, she argues the court abused its discretion by dividing the marital debt in approximately equal amounts between the parties. We disagree.

¶ 42    A trial court has broad discretion in the division of marital assets, and we will reverse its determinations only if the court has abused that discretion. *In re Marriage of Wojcik*, 362 Ill. App. 3d 144, 161 (2005). An abuse of discretion occurs only when the trial court's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 61.

¶ 43    Section 503(d) of the Act requires a trial court to divide marital property in just proportions. 750 ILCS 5/503(d) (West 2020). However, it is well-settled that this does not require an equal split, but rather the most equitable distribution in light of the statutory factors. See *In re Civil Union of Hamlin*, 2015 IL App (2d) 140231, ¶ 61 ("An equitable property division does not necessarily mean an equal distribution; a party may receive a greater share of the property if the

13

relevant factors warrant the result."); *In re Marriage of Heroy*, 385 Ill. App. 3d 640, 661 (2008) (an unequal division of marital property may be appropriate depending on the circumstances of each case). "The touchstone of proper apportionment is whether it is equitable in nature, with each case resting on its own facts." *In re Marriage of Nuechterlein*, 225 Ill. App. 3d 1, 8 (1992).

¶ 44 The relevant statutory factors to consider when dividing marital property are: the contribution of the parties to the marital property; the value of the property set apart for each spouse; the duration of the marriage; the relevant economic circumstances of the parties upon distribution of the property; the age, health, station, occupation, amount and sources of income, vocational skills, and employability of the parties; the custodial provisions for any children; whether apportionment is in lieu of or in addition to maintenance; and the reasonable opportunity of each spouse to acquire capital assets and income in the future. 750 ILCS 5/503(d) (West 2020).

¶ 45 In its September 22, 2022, Order, the trial court stated:

"The parties have significant marital debt, which should be distributed equitably. Husband shall pay the credit card debt owed to Barclays ($13,346.50) and Discover ($29,153.46). Wife shall pay her medical bills in the sum of $448, the Country Finance Life Insurance loan in the sum of $5,000, the Chase credit card in the sum of $14,130, the Citibank Judgment in the sum of $6,835, the Barclay Judgment in the sum of $6,002.75. Wife testified she owes her mother in the sum of $8,921, but no promissory note or other evidence was presented showing that is a valid debt. In any event, Wife shall pay the debt to her mother if it is truly owed."

¶ 46 Here, Dawn contends that the trial court erred in its awarding of the marital assets. Specifically, she argues the "nearly equal" division of marital debt constituted an abuse of discretion. Dawn asserts she was allocated $41,336.75 of the debt; however, $8921 of that amount was an unverified amount allegedly owed to Dawn's mother. Michael was allocated $42,499.96 of the parties' marital debt. In its oral pronouncement following argument on Dawn's motion to reconsider, the court stated, in part: "I did the best I could with what you both gave me. I divided the marital property and the debts as equitably as I thought was appropriate in this situation." Given

14

the evidence and the well-reasoned order of the trial court, we decline to substitute our judgment for that of the trial court. We cannot find that the trial court's allocation of marital debt was arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted. As such, we conclude that the court did not abuse its discretion in diving marital property.

¶ 47                    C. Calculation of Husband's Annual Gross Income

¶ 48    Dawn next argues that the trial court erred in calculating Michael's annual gross income for maintenance purposes. Specifically, she argues the court's determination of Michael's gross annual income was erroneous, because it relied exclusively on his financial affidavit. Further, she argues the court disregarded Michael's pay stub which was admitted into evidence as Respondent's Exhibit 2. We disagree.

¶ 49    A trial court's factual findings regarding a maintenance determination are reviewed under the manifest weight of the evidence standard. *In re Marriage of Sturm*, 2012 IL App (4th) 110559, ¶ 3. "Findings are against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the court's findings are unreasonable, arbitrary, and not based on any of the evidence." *Id.* Section 504 of the Act authorizes the trial court to grant a maintenance award for either spouse in a dissolution of marriage. 750 ILCS 5/504(a) (West 2020). The amount of maintenance is calculated based on the parties' income. *Id.* § 504(b-1)(1)(A).

¶ 50    In its September 22, 2022, Order, the trial court found a "a maintenance award is appropriate after having considered the relevant statutory factors." The trial court's September 22, 2022, Order includes:

> "The Court finds Husband's monthly gross income in 2021 is $19,114, which is $229,368 annually. Wife's imputed income is $24,960, so beginning January 2021, Husband's maintenance obligation to Wife is $3,811 per month. ***
> The maintenance obligation should last for 15.93 years, due to the date of the filing of the Petition for Dissolution of Marriage. The Court finds that January 2019 begins the duration of the maintenance award. This maintenance award is for a fixed term and may

15

be modified or terminated only upon a showing of a substantial change in circumstances as provided by statute."

¶ 51    Here, Dawn argues the trial court improperly calculated Michael's gross income which in effect reduced the maintenance award. In his financial affidavit and testimony, Michael reported that his gross monthly income totaled $19,113.78. In its September 22, 2022, Order, the court adopted this evidence, and found that Michael's monthly gross income is $19,114, or $229,368 annually. Dawn argues Michael's pay stub supersedes his financial affidavit and testimony. Michael's pay stub showed he received $240,677.77 between January 1, 2021, and October 26, 2021. Thus, Dawn argues the court erred by finding Michael's gross income was $229,368 and that the maintenance award should be recalculated. In response, Michael argues Dawn's reliance upon his pay stub is misplaced. Specifically, he alleges the "income" to Michael in the pay stub includes *per diem*, a car allowance, and reimbursements. Michael asserts that during the time period in question, he received $116,839.44 in regular hourly pay, $20,240 in "SUPER PAY" and $43,700 in bonus pay for a total of $180,779.44.

¶ 52    Seemingly, the trial court determined Michael's income based on his financial affidavit which was properly admitted into evidence on the first day of trial. The trial in this cause commenced on December 3, 2021, and continued on January 21, 2022, April 21, 2022, and May 16, 2022. Thus, the record demonstrates that the trial spanned over the course of six months. The trial court was in the best position to weigh the credibility of the evidence and the witnesses' testimony. We cannot say that the opposite conclusion is clearly evident, or the finding is arbitrary, unreasonable, or not based on evidence. As such, we find that the trial court's maintenance award was not against the manifest weight of the evidence.

16

¶ 53                    D. Directing Wife to Submit to Drug Testing

¶ 54    Next, on appeal, Dawn contends that the trial court's order directing her to submit to quarterly drug testing was improper. Specifically, Dawn argues that order is erroneous because the trial court failed to first make a finding that she engaged in conduct that seriously endangered A.R.'s mental, moral, or physical health or that significantly impaired her emotional development. Further, Dawn argues that even if the court had made such a finding, the restriction imposed was not tailored to protect A.R. and was therefore improper. We disagree.

¶ 55    In allocating parenting time, "[i]t is presumed both parents are fit and the court shall not place any restrictions on parenting time as defined in Section 600 and described in Section 603.10, unless it finds by a preponderance of the evidence that a parent's exercise of parenting time would seriously endanger the child's physical, mental, moral, or emotional health." 750 ILCS 5/602.7(b) (West 2020). A " '[r]estriction of parenting time' means any limitation or condition placed on parenting time, including supervision." *Id.* § 600(i).

¶ 56    A trial court's determination that a parent's conduct endangered her child's mental, moral, or physical health or significantly impaired her child's emotional development is reviewed under the manifest weight of the evidence standard. *In re Marriage of Mayes*, 2018 IL App (4th) 180149, ¶ 59. A determination will be found to be against the manifest weight of the evidence if, "upon review of the entire record, the opposite conclusion is clearly evident." *Id.* The restriction imposed by the court will not be reversed absent an abuse of the trial court's discretion. *Id.* ¶ 61. An abuse of discretion occurs when "the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009). A trial court's determination regarding child custody is given great deference because that court is in a superior position to judge the credibility

17

of the witnesses and determine the best interests of the child. *In re Marriage of Iqbal*, 2014 IL App (2d) 131306, ¶ 55.

¶ 57 In its September 22, 2022, Order, the trial court ordered Dawn to submit to a quarterly drug test and to provide the results to Michael within seven days. In its Order, the court stated:

> "Husband has valid concerns about Wife's past and current drug use. Wife testified in Court that she used drugs, particularly Methamphetamine, within the last thirty days of April 21, 2022. Husband requests that Wife submit to a hair follicle test on a quarterly basis to ensure he is aware of her drug use, if any. The Court finds this is a reasonable request and orders Wife to submit to a hair follicle test each quarter at her own expense and to provide the results to Husband within seven days. If Husband's work schedule were different and he did not have to travel during the week, it should be noted that the Court would award the majority of the parenting time to Husband, considering Wife's recent drug use and past history of drug use."

In its oral pronouncement following Dawn's posttrial motion, the court stated, "There should not be an issue with the hair follicle test unless there's a problem. It's not a hard thing to go do. That is staying in the Order." In her brief before this court, Dawn notes that after she testified on April 21, 2022, and admitted her drug use, A.R. was removed from her custody by the Department of Children and Family Services.

¶ 58 We do not agree with Dawn that the court's order for her to submit to drug testing is a "restriction" on parenting time. The trial court's Order awarded Dawn the majority of parenting time. The Order does not provide for any remedy or condition on the results of the drug test. Dawn admitted to using methamphetamine within the last 30 days of April 21, 2022. An order to submit to drug testing is not a "restriction" of parenting time, but rather is used to ensure the best interests of the child. The drug testing requirement of the Order is to confirm Dawn is not actively using methamphetamine or other illegal substances while caring for A.R. The trial court was in the best position to hear the testimony of the parties, make credibility determinations, and determine what was in the best interests of A.R. We decline to substitute our judgment for that of the trial court's.

18

As such, we cannot conclude that the trial court's order directing her to submit to quarterly drug testing was improper.

¶ 59                                    E. Attorney Fees

¶ 60    Finally, Dawn contends that the trial court erred by denying her request for attorney fees. The allowance of attorney fees and the amount awarded are decisions within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *In re Marriage of Baniak*, 2011 IL App (1st) 092017, ¶ 9. An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *In re Marriage of Buonincontro*, 2022 IL App (2d) 210380, ¶ 41. Ordinarily, the primary obligation for the payment of attorney fees rests on the party on whose behalf the services were rendered. *In re Marriage of Kane*, 2016 IL App (2d) 150774, ¶ 22. However, section 508 of the Act authorizes the trial court to order a party to pay a reasonable amount of the other party's attorney fees. 750 ILCS 5/508 (West 2020).

¶ 61    In determining whether to award attorney fees under section 508 of the Act, "[t]he trial court must (1) consider[ ] the financial resources of the parties and (2) make its decision on a petition for contribution in accordance with subsection (j) of Section 503." (Internal quotation marks omitted.) *In re Marriage of Heroy*, 2017 IL 120205, ¶ 19. Subsection 503(j) provides "[a]ny award of contribution to one party from the other party shall be based on the criteria for division of marital property under this Section 503 and, if maintenance has been awarded, on the criteria for an award of maintenance under Section 504." 750 ILCS 5/503(j)(2) (West 2020). The burden is on the party seeking the fees to produce detailed facts and computations upon which the claim for fees is predicated. *In re Marriage of Agostinelli*, 250 Ill. App. 3d 492, 503 (1993).

19

¶ 62    In this case, Dawn argues Michael should pay all attorney fees owed to both of her attorneys, Mr. Erickson and Mr. Casey. Michael, pursuant to a previous court order, paid $7000 to Mr. Erickson. As such, Dawn is requesting the balance of her attorney fees owed ($23,190.06) be paid by Michael.

¶ 63    The trial court set forth its reasoning in denying Dawn's request for attorney fees in its Order. The court considered the property received by each party and their respective incomes and financial obligations as a result of the Order. The court considered Dawn's potential and current income, child support, maintenance, arrearage payments, and marital property. Specifically, the court imputed for Dawn in the sum of $24,960 per year, the equivalent to a full-time, minimum wage job, and found she had the ability to pay her own attorney fees. Further, in its written Order, the court opined "Husband has already contributed $7,000 to Wife's attorney's fees. In addition, the amount Mr. Casey has charged Wife (over $20,000) over a period of six months is unreasonable. This case was not overly complicated or difficult. The parties did not have an overwhelming amount of assets or liabilities." The court's findings are supported by the evidence and the record on appeal. For the foregoing reasons, we find that the trial court's decision to deny Dawn's request for attorney fees was not arbitrary, fanciful, or unreasonable, and as such, was not an abuse of discretion.

¶ 64                                III. CONCLUSION

¶ 65    The trial court's valuation of marital property was not against the manifest weight of the evidence, its division of marital property was not an abuse of discretion, its calculation of Husband's annual gross income was not against the manifest weight of the evidence, its order directing Wife to submit to quarterly drug testing was not against the manifest weight of the

20

evidence, and it did not abuse its discretion in denying the respondent's request for attorney fees.

For the foregoing reasons, we affirm the judgment of the circuit court of Macon County.

¶ 66    Affirmed.