NO. 4-02-0937

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In re: the Marriage of

CATHERINE MUNGER,

          Petitioner-Appellant,

          and

THURMAN MUNGER,

          Respondent-Appellee.

)

)

)

)

)

)))

Appeal from

Circuit Court of

Adams County

No. 02OP160  

Honorable

Chet W. Vahle,

Judge Presiding.

JUSTICE APPLETON delivered the opinion of the court:

Catherine and Thurman Munger, husband and wife, filed petitions for orders of protection against one another.  They had a daughter in day care.  After an evidentiary hearing on the two petitions, the trial court granted Catherine's petition and denied Thurman's petition.  In its order of protection, the trial court awarded temporary custody of the child to Catherine and allowed Thurman the right to visit the child.  

Afterward, Thurman filed a petition for a rule to show cause, complaining that Catherine had frustrated the visitation provisions in the order of protection.  The trial court dismissed the petition for a rule to show cause but ordered that Thurman's visits with the child would henceforth be unsupervised.  

Catheri­ne appeals, arguing that by eliminating the supervision of visitation, the trial court modified the order of protection 
sua
 
sponte
, without a written motion to do so or prior notice to her.  Thurman has filed no brief.  Nevertheless, the record is simple, and we can easily decide the issues in this appeal without an appellee's brief.  See 
First Capitol Mortgage Corp. v. Talandis Construction Co.
, 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495 (1976).  Catherine's brief finds support in the record and points to 
prima
 
facie
 reversible error.  See 
Talandis
, 63 Ill. 2d at 133, 345 N.E.2d at 495.  

Catherine argues that the lack of (1) a written motion to modify the protective order, and (2) advance written notice to her are fatal to the trial court's modification of its protective order.  We affirm the trial court's judgment.          

I. BACKGROUND

The order of protection allowed Thurman to visit the child only "while [the] child [was] at [Daydreams] [D]aycare[,] with 48[-]hour advance written notice to the day[]care and [Catherine,] or as agreed in writing by the parties through counsel."  Thurman was to stay at least 500 feet from Catherine and--except when visiting the child at Daydreams Daycare--the same distance from the child, too.

On September 17, 2002, Thurman filed his petition for a rule to show cause, alleging that Catherine had disenrolled the child from Daydreams Daycare without telling him she was going to do so or letting him know where he could visit the child.

According to an order entered on October 4, 2002, the "[p]arties appear[ed] with counsel in [an] attempt to renegotiate visitation.  By agreement, [Thurman could] have visitation[,] as arranged through [a] private visitation supervision service or [as] otherwise agreed [to] by the parties, of at least [two] days every other week."  

On October 11, 2002, the trial court held an evidentiary hearing on Thurman's petition for a rule to show cause.  Thurman testified that on September 6, 2002, Daydreams Daycare told him the child was no longer enrolled there.  This news came as a surprise to Thurman.  His attorney called Catherine's attorney and learned that the child was now enrolled in the day care at Blessing Hospital, where Catherine worked.  The order of protection expressly forbade Thurman from entering that hospital (except in a medical emergency or--with advance notice to Catherine--for routine treatment or to visit a patient).  As a consequence, he was deprived of opportunities to visit his daughter.  Thurman's attorney asked him:

"Q.  Are you asking the [c]ourt to consider doing away with the supervised visitations?

 A.  Yes, sir."

Catherine took the stand and admitted removing the child from Daydreams Daycare and enrolling her in Blessing Daycare.  She had done so because Blessing Daycare's hours of operation better fit her unpredictable work schedule.  

In his closing argument, Thurman's attorney told the trial court:  "As a remedy, I'm asking the [c]ourt to revisit the question of supervised visitation or, in the alternative, I'm asking the [c]ourt to allow my client's parents to supervise."   

An order entered on October 16, 2002, says:

"Cause comes on for hearing on contempt petition.  All parties present and with counsel.  Petition to [s]how [c]ause is dismissed.  Effective [
nunc
 
pro
 
tunc
] 10/11/02, 
the previous [o]rder of [p]rotection [is] here­by modified
 as follows:     

Thurman Munger is no longer required to have supervised visitation.  Thurman Munger is granted visitation for three six[-]hour visits per week[,] to be arranged between [Thurman] Munger's mother and Catherine Munger.  One visit shall be on Saturday or Sunday.  Neither party shall make unreasonable demands or restrictions on times or places for visitation.

By agreement, possession of the former marital home at 4400 State Street, Quincy, IL, is awarded to Thurman Munger.  All previous orders remain in effect."  (Emphasis added.)

When Catherine's attorney asked the trial court to explain why visitations no longer needed to be supervised, the trial court said:  "[T]he reason why I'm not making [visitations] supervised is we had a workable solution set up and your client sabotaged it, so now we are going to do whatever we have to do so the father can visit with the child and that I'm satisfied that the child's safety is not compromised."

This appeal followed.

II. ANALYSIS

When a party appeals the modification of an order of protection, we will ask whether the trial court abused its discretion.  
In re Marriage of Fischer
, 228 Ill. App. 3d 482, 489, 592 N.E.2d 604, 608 (1992).  The trial court abused its discretion only if its decision was "clearly against logic."  
State Farm Fire & Casualty Co. v. Leverton
, 314 Ill. App. 3d 1080, 1083, 732 N.E.2d 1094, 1096 (2000).  The question is not whether we would have made the same decision if we were the trial court.  
Leverton
, 314 Ill. App. 3d at 1083, 732 N.E.2d at 1096.   Rather, the question is whether the trial court made an arbitrary decision, without using conscientious judgment, or whether, in view of all of the circumstances, the trial court overstepped the bounds of reason, ignored the law, and thereby caused substantial prejudice to the appellant.  
Leverton
, 314 Ill. App. 3d at 1083, 732 N.E.2d at 1096.

With that deferential standard of review in mind, we consider Catherine's argument.  The protective order 
allowed Thurman to visit the child only "while [the] child [was] at [Daydreams] [D]aycare[,] with 48[-]hour advance written notice to the day[]care and [Catherine,] 
or as agreed in writing by the parties through counsel
."  (Emphasis added.)  Pursuant to the protective order, the parties agreed, in writing, that 
Thurman could "
have visitation[,] as arranged through [a] private visitation supervision service or [as] otherwise agreed [to] by the parties, of at least [two] days every other week."  Clearly, when the parties renegotiated visitation, they did so under the aegis of the protective order, which remained in force.

Section 224(b) of the Illinois Domestic Violence Act of 1986 (Act) provides:  "
Upon motion by petitioner or respondent, the court may modify any prior order of protection's remedy for *** visitation ***."  750 ILCS 60/224(b) (West 2000).  Section 210.1(c)(i) of the Act provides:  "Notice in the pending civil case shall be given (i) by either party under this [s]ection, with respect to *** modifications *** or other relief pertinent to an order of protection, in accordance with Illinois Supreme Court Rules 11 and 12 ***."  750 ILCS 60/210.1(c)(i) (West 2000).  Those rules describe how to serve "papers" on opposing parties (145 Ill. 2d R. 11) and how to certify, in writing, that one has done so (145 Ill. 2d R. 12).  "'Paper' means pleading, motion, notice, *** or other paper or combination of papers required or permitted to be filed."  134 Ill. 2d R. 2(b)(3).  These statutory sections and supreme court rules require a party requesting the modification of a protective order to file a motion requesting that relief and to serve a copy of the motion and a notice of hearing upon the opposing party.  

The order of protection allowed Thurman to visit the child either (1) at Daydreams Daycare or (2) as the parties agreed in writing.  Because Catherine, without notice to Thurman, had taken the child out of Daydreams Daycare, he could not visit the child there.  The protective order nevertheless remained in force--and precisely because it remained in force, Catherine was at risk of being found in contempt of court.  For Thurman, the only remaining option, under the protective order, was his visiting the child "as agreed in writing by the parties through counsel."  The parties agreed, in writing, to supervised visitation.  

When the trial court, without Catherine's agreement, eliminated the supervision of Thurman's visits, it contradicted and effectively modified the protective order, without a written motion to do so or prior notice to Catherine.  We agree with the trial court's characterization of its order of October 16, 2002:  it was a modification of the protective order.

While it is true that Catherine was not given prior notice of the court's consideration of the issue of modification in accord with section 224(b) of the Act (750 ILCS 60/224(b) (West 2000)) or Supreme Court Rules 11 and 12 (145 Ill. 2d Rs. 11, 12), we find the power to make such a change in the previously ordered visitation inherent in the trial court's authority.  "A court's authority to dissolve or modify a previously entered injunctive order exists in a dissolution proceeding just as in other civil proceedings."  
In re Marriage of Fischer
, 228 Ill. App. 3d 482, 488, 592 N.E.2d 604, 608 (1992); 
In re Marriage of De Rosa
, 115 Ill. App. 3d 774, 778, 451 N.E.2d 13, 15 (1983); 
Melvin v. Melvin
, 94 Ill. App. 2d 403, 236 N.E.2d 913 (1968) (abstract of opinion); 
Field v. Field
, 79 Ill. App. 2d 355, 359, 223 N.E.2d 551, 553-54 (1967).  It has also been said that "[t]he measure of the court's power in a civil contempt proceeding is determined by the requirements of full remedial relief."  
Sauber v. Whetstone
, 199 F.2d 520, 523 (7th Cir. 1952).

The trial court here had jurisdiction of the subject matter and of the parties.  We hereby find that it further had the power to make such modifications of the visitation under the circumstances presented here consistent with the best interest of the child.  750 ILCS 5/607(c) (West 2000).

III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

MYERSCOUGH, P.J., concurs.

McCULLOUGH, J., specially concurs.

JUSTICE McCULLOUGH, specially concurring:

I agree that the trial court did not abuse its discretion in altering the visitation provisions of the protective order.  The trial court found Catherine in contempt, stating that she sabotaged the court's order of protection.  Nevertheless, the trial court dismissed the rule to show cause upon modification of the order of protection to facilitate visitation by Thurman.

The measure of the power of the court in a civil contempt proceeding is determined by the requirements of full remedial relief.  See 
Sauber
, 199 F.2d at 523.  Moreover, a party who refuses to obey the mandate of the court demonstrates her contempt for the courts and is not entitled to their affirmative assistance.  See 
Wick v. Wick
, 19 Ill. 2d 457, 459, 167 N.E.2d 207, 209 (1960).

As a result, not only did the trial court have jurisdiction of the subject matter and the parties, it had the power to modify the original order as a means to provide full remedial relief.  The record suggests that it was Catherine's disobedience to the original order that caused Thurman to initiate the contempt proceeding.  Catherine ought not be heard to complain about the procedures employed to enforce the order of protection, particularly since she does not argue that the modification is not supported by the evidence.

No abuse of discretion was demonstrated.

A final note.  Hopefully, at some stage, Catherine and Thurman will cast aside their selfish personal interests for the best interests of the child.