NOTICE

Decision filed 06/03/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 241305-U

NO. 5-24-1305

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| TRACY E. CHRISTIANSON, | ) | St. Clair County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 23-DN-231 |
| | ) | |
| DEAN L. CHRISTIANSON, | ) | Honorable |
| | ) | Tameeka L. Purchase, |
| Respondent-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Justices McHaney and Bollinger concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the trial court's maintenance award and allocation of marital debt where the court's decision was not an abuse of discretion. We vacate and remand the portion of the trial court's judgment awarding petitioner the full value of the law firm partnership where such award was inconsistent with the remainder of the order.

¶ 2    Respondent, Dean Christianson, appeals the December 4, 2024, order of the circuit court of St. Clair County dissolving his marriage with petitioner, Tracy Christianson. On appeal, Dean argues that the court erred by (1) awarding Tracy the full value of his partnership interest in his law firm, (2) calculating maintenance by not imputing income to Tracy or by not deviating below the maintenance guidelines, and (3) dividing the parties' student loan debt by allocating 60% to

1

Dean and 40% to Tracy. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this order.

¶ 3                                    I. BACKGROUND

¶ 4      Because the parties share a last name, we will refer to them by their first names throughout this decision. On June 12, 2023, Tracy filed a petition for dissolution of marriage. On June 30, 2023, Dean filed an answer. This matter proceeded to trial on August 12, 2024. The following facts were adduced at trial.

¶ 5      Dean and Tracy married on August 17, 1985, in Belleville, Illinois. Four children were born to the parties during the marriage: the eldest (born July 1990) and triplets (born May 1992). During the marriage, the parties also provided primary day-to-day care for their three grandchildren, who resided in the marital home.

¶ 6      At the time of trial, Tracy was 65 years old. She graduated from the University of Missouri School of Law in 1983 and was previously licensed to practice law in both Missouri and Illinois. At the time of trial, her licenses were in "retired" status.

¶ 7      Tracy's last full-time employment as an attorney ended in October 1991 when she was placed on bedrest during her pregnancy with the triplets. Throughout the marriage, Tracy served as the primary caregiver and homemaker for the parties' children and grandchildren. She held various part-time positions over the years but has been unemployed since approximately 2020. Tracy currently resides in Kennesaw, Georgia, with the parties' son. In June 2021, following the death of her mother, Tracy inherited nonmarital assets, including cash and investment accounts valued at approximately $265,000 as well as jewelry and antiques. Tracy suffered from "bad back pain" as the result of a car accident.

2

¶ 8    At the time of trial, Dean was 66 years old. He has been employed full-time as an attorney at a St. Louis law firm since 1997. He became partner in 2001 and holds approximately 11.54% partnership interest in the firm. Dean's gross income for 2021, 2022, and 2023 was approximately $218,187, $221,683, and $251,537, respectively. Dean resides in an apartment in Swansea, Illinois.

¶ 9    Dean's law firm maintains a capital account, the value of which was disputed at trial. Dean valued his share at $33,000 based on a $300,000 minimum balance. Evidence at trial indicated the total account balance was $600,000 at the time of trial. At the end of June 2024, Dean's retirement account was valued at $1,418,179.79. Dean also had an LPL Financial IRA valued at $102,503.23.

¶ 10    During the marriage, the parties incurred approximately $240,000 in Parent PLUS student loan debt for the benefit of their children. Dean paid $2,247 per month on those loans. At the time of trial, neither Dean nor Tracy were drawing social security. In his position statement, for purposes of the maintenance calculation, Dean asked the trial court to impute income to Tracy in the amount she was eligible to receive in social security.

¶ 11    Following trial, the trial court took the matter under advisement and ordered the parties to submit closing arguments and proposed judgments. On December 4, 2024, the trial court entered its judgment of dissolution of marriage. With respect to Dean's partnership interest in his law firm, the trial court stated, "The partnership interest accrued during the marriage and is marital property." The court found as follows:

"[T]he current value of that account is in excess of $600,000. Dean testified, however, that the account is maintained at a minimum of $300,000 for purposes of operation of the firm. If Dean terminated his interest in the partnership he would receive 11% or $33,000 of that operating account. The increased balance of the operating account will not be divided between the parties as, based upon the testimony it is clear that the law

3

firm uses that account to pay out profits to the partners. The Court will consider such profits

in its maintenance calculations herein.

> For purposes of division of the marital assets, the Court assigns a value of
> $33,000.00 to the account and the account is awarded to Dean, free and clear of any interest
> by Tracy."

¶ 12    With regard to the parties' retirement accounts, the trial court found Tracy had an IRA with an approximate value of $42,500. The court found Dean had an IRA with a balance of approximately $102,500 as well as a 401(k) account through his firm with a value of approximately $1,418,000. The court divided the parties' retirement accounts so that each party received 50% of the total retirement funds.

¶ 13    Also relevant to this appeal, the trial court found that the parties accumulated approximately $240,000 in Parent PLUS loans for the benefit of their children. The court allocated 60% of the outstanding loan totals to Dean and 40% of the totals to Tracy. The court stated, "This division by the Court is based upon the fact that upon entry of a Maintenance Order, Dean will retain 60% of the net household income while Tracy will have 40%."

¶ 14    With respect to maintenance, the trial court's judgment awarded Tracy maintenance in the amount of $4,472.50 per month. In support of its decision, the court stated, "The Court finds that Tracy is entitled to maintenance. The parties are not in agreement as to the amount of maintenance or the incomes of the parties. Dean however did not contest that Tracy is entitled to maintenance." The court's order continued:

> "Based upon the provisions of the [Illinois Marriage and Dissolution of Marriage
> Act], because the parties have been married for an excess of 20 years, the presumptive
> length of maintenance is indefinite. 750 ILCS 5/504(B). At the time of trial, both parties

4

were beyond retirement age, in two months, Tracy will be 66 years of age and Dean will be 67. That Dean's retirement may constitute a substantial change in circumstances justifying a modification or termination of maintenance upon the filing of an appropriate pleading by Dean."

¶ 15 In support of its maintenance award, the trial court stated the following:

"Commencing in 1992 Tracy became responsible for the day-to-day needs of the parties['] four children. Tracy has likewise been responsible for the day to day needs of the parties' three young grandchildren.

* * *

Tracy's contributions as the primary caregiver for the [parties'] children and grandchildren as well as her contributions as a homemaker have contributed significantly to Dean's ability to build his own law practice while diminishing Tracy's own ability to develop her career as an attorney.

***

Tracy's income consists solely of dividends from her non-marital inheritance. Tracy calculated said figure as $1,067 dollars per month on her Financial Affidavit. ***

Dean's gross income in 2023 from his law firm was $254,209.00. Dean has excluded all of his income with the exception of his base pay of $10,960.00 per month from his maintenance calculations. The Court is required to consider the entirety of Dean[']s income. In this particular case, the income has varied each year however the trend each year from 2021 through 2023 has been that the income has increased each year. Based thereon it is appropriate for the court to use Dean's 2023 income when projecting his future earnings.

5

Based upon the above factors, the Court finds no reason to deviate from the maintenance guidelines. The Court finds that based upon the 2023 incomes of the parties, Dean's maintenance obligation is $4,472.50 per month.

Dean argues that the Court should impute Social Security earnings to Tracy for purposes of calculating maintenance. Tracy argues that if the Court imputes such income to Tracy that it is only logical that the Court do so with Dean as well. Both parties are currently eligible for Social Security benefits.

Both parties testified that they do not intend to take Social Security benefits currently because of their desire to receive an increased benefit by waiting to a later date. That it is speculative for the Court to use any figures for Social Security entitlement other than the current entitlements of the parties."

¶ 16 With respect to maintenance, the trial court concluded that if it imputed social security benefits to each party, then "[t]he guideline maintenance increases to $4,734.50 per month." The court further stated, "If the court considers only Social Security benefits available to Tracy and does not consider those to which Dean is entitled, then the monthly maintenance amount is $3,905.00."

¶ 17 In its judgment, the trial court, in disposing of the parties' marital residence, ordered the parties reimbursed for their repairs and maintenance of the property. The court ordered the remaining net proceeds divided 50% to Tracy and 50% to Dean. The court further ordered, "From Dean's 50% share, the sum of $33,000 shall be paid to Tracy to offset the value of the law firm partnership interest awarded to Dean."

¶ 18   Further relevant to this appeal, in its December 4, 2024, order, the court stated, "Dean shall pay guideline maintenance in the amount of $4,472.50 per month." The court awarded Dean his partnership interest in his law firm, "free and clear of any claim by Tracy."

¶ 19   On December 11, 2024, Dean filed a timely notice of appeal.

¶ 20                              II. ANALYSIS

¶ 21   On appeal, Dean argues that the trial court erred by awarding Tracy the full value of his partnership interest in his law firm. He also contends that the court erred in calculating maintenance by not imputing income to Tracy or by not deviating below the maintenance guidelines. Finally, he argues that the court erred by dividing the parties' student loan debt by allocating 60% to Dean and 40% to Tracy. In response, Tracy argues that the court's order regarding maintenance, the student loans, and the law firm partnership was proper. For the reasons that follow, we affirm in part and remand in part for further proceedings. We consider each argument in turn.

¶ 22                      A. Calculation of Maintenance

¶ 23   We first consider Dean's argument that the trial court erred in its maintenance award by failing to impute income to Tracy, and, in the alternative, by failing to deviate below the statutory guidelines based on Tracy's nonmarital assets. In response, Tracy contends the court did not err by not imputing income nor did it err by not deviating below the maintenance guidelines. We agree with Tracy.

¶ 24   Pursuant to section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/504(a) (West 2022)), a court may grant maintenance to either spouse in an amount, and for a duration of time, that the court deems just after considering all relevant factors. Section 504(a) of the Act lists the following 12 factors to be considered by a court when ordering maintenance: (1) income and property of each party, including marital property apportioned and

7

nonmarital property assigned to the party seeking maintenance; (2) the needs of each party; (3) earning capacity of each party; (4) impairment of present and future earning capacity of the party seeking maintenance as a result of a devotion of time to domestic duties or forgoing or delaying education, training, employment, or career opportunities due to the marriage; (5) time needed for the party seeking maintenance to acquire appropriate education, training, and employment and whether that party is able to support himself or whether that party has custody of a child making it appropriate for the custodian not to seek employment; (6) standard of living established during the marriage; (7) duration of the marriage; (8) age and physical and emotional condition of both parties; (9) tax consequence of the property division; (10) contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse; (11) any valid agreement of the parties; and (12) any other factor that the court expressly finds to be just and equitable. *Id*.

¶ 25    Section 504(b-2)(2) of the Act (*id.* § 504(b-2)(2)) authorizes the trial court to deviate from the guideline amount of maintenance. One of the factors relevant to a deviation is the respective earning capacities of the parties. *Id.* § 504(a)(3). "In order to impute income to a party, the court must find that the party is voluntarily unemployed, is attempting to evade a support obligation, or has unreasonably failed to take advantage of an employment opportunity." *In re Parentage of M.M.*, 2015 IL App (2d) 140772, ¶ 44.

¶ 26    The propriety of a maintenance award is within the trial court's discretion, and the court's decision will not be disturbed absent an abuse of discretion. *In re Marriage of Sturm*, 2012 IL App (4th) 110559, ¶ 3. An abuse of discretion will only be found if no reasonable person would accept the view of the trial court. *Id.* (citing *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 52; *In re Marriage of Schneider*, 214 Ill. 2d 152, 173 (2005)).

¶ 27    Dean first argues the trial court erred by not imputing social security income to Tracy. The court expressly refused to impute social security income, and noted that both parties are eligible to draw social security benefits. In its decision, the court calculated that imputing social security income only to Tracy would reduce the guideline maintenance award from $4,472.50 to $3,905, while imputing social security income to both parties would increase it to $4,734.50. The court concluded that using current, actual incomes was the most reliable and non-speculative approach.

¶ 28    In its written judgment, the trial court stated it reviewed and considered each of the factors in section 504(a). In support of its maintenance award, the court stated:

> "Tracy is an attorney licensed in both Illinois and Missouri. Her license is in retired status. Tracy has not worked full time since prior to the birth of the parties' triplets in 1992. Commencing in 1992 Tracy became responsible for the day-to-day needs of the parties['] four children. Tracy has likewise been responsible for the day to day needs of the parties' three young grandchildren.
>
> Dean testified to Tracy's serious back injury as well as her daily responsibilities to both their children and grandchildren. As Dean indicated, he and Tracy raised seven children together; their four [children] and the three grandchildren. Tracy's responsibilities to the seven children as well as her health have impacted her earnings potential.
>
> Dean has been the primary breadwinner during the marriage. Although Dean is 67 years of age, he continues to work full time as a practicing attorney.
>
> Tracy's contributions as the primary caregiver for the [parties'] children and grandchildren as well as her contributions as a homemaker have contributed significantly to Dean's ability to build his own law practice while diminishing Tracy's own ability to develop her career as an attorney.

Tracy inherited funds from her mother's estate and uses those funds to meet her basic needs.

Tracy's income consists solely of dividends from her non-marital inheritance. Tracy calculated said figure as $1,067 dollars per month on her Financial Affidavit. ***

Dean's gross income in 2023 from his law firm was $254,209.00. ***

Based upon the above factors, the Court finds no reason to deviate from the maintenance guidelines."

¶ 29 Dean admitted that because Tracy did not hold law licenses in Illinois, Missouri, or Georgia, she could not practice law. He argued however, "she obviously would have been more than qualified to be a paralegal." He argued that because she held several part-time jobs as a lawyer after the children were emancipated, her skills were kept intact. Alternatively, Dean argues income should be imputed to Tracy in the amount of social security income she is eligible to receive. We are not convinced.

¶ 30 Dean also argues the trial court erred by not imputing income because (1) Tracy is "voluntarily unemployed" because she is a licensed attorney and previously worked part-time, (2) she unreasonably failed to take advantage of employment opportunities, and (3) in the alternative, the court should have deviated below the maintenance guidelines because of Tracy's nonmarital assets.

¶ 31 As noted above, in the trial court's judgment, it detailed: the lengthy marriage of the parties and Tracy's role as primary caregiver and homemaker for the parties' four children and three grandchildren; Tracy's last full-time legal employment which ended in 1991 when she was placed on bedrest while pregnant with the triplets, followed by the parties' agreement that Tracy would not return to full-time work given the demands of raising the children; Tracy's subsequent part-

10

time work that she could not sustain because of the childcare responsibilities for the grandchildren; Tracy's age, her serious back injury, and Dean's testimony that Tracy's mental-health and physical conditions "have clearly impacted her employability"; Tracy's nonmarital inheritance from her mother, from which she receives only $1,067 per month in dividends; Dean's continuing full-time practice as a law partner earning over $250,000 annually; and the parties' agreement that neither is currently drawing social security income because both wish to defer for higher future benefits.

¶ 32    We have carefully reviewed the record in this case. It is clear from the trial court's well-reasoned judgment that it considered all relevant factors of section 504(a). Consequently, the trial court did not abuse its discretion by refusing to impute income to Tracy, nor did it abuse its discretion by refusing to deviate below the statutory maintenance guidelines.

¶ 33                              B. Parent PLUS Loans

¶ 34    Dean next argues that the trial court erred by dividing the Parent PLUS student loans when it allocated 60% to Dean and 40% to Tracy. Specifically, Dean argues that a larger share of the student loan debt should have been allocated to Tracy because of her significant nonmarital assets. Tracy responds that the court's division was equitable. We agree with Tracy.

¶ 35    "It is well settled that marital debts as well as marital assets must be distributed equitably." *In re Marriage of Lees*, 224 Ill. App. 3d 691, 693 (1992). In dividing marital property, the distribution by the court need not be equal so long as it is equitable. *In re Marriage of Werries*, 247 Ill. App. 3d 639, 649 (1993). A trial court has broad discretion in the division of marital assets, and we will reverse its determinations only if it is clear that the trial court has abused that discretion. *In re Marriage of Sanfratello*, 393 Ill. App. 3d 641 (2009). An abuse of discretion occurs only when the trial court's ruling is arbitrary, fanciful, or unreasonable, or where no

11

reasonable person would take the view adopted by the trial court. *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 61.

¶ 36    In the case at hand, the trial court ordered that "Dean shall be responsible for 60% of the outstanding loan totals and Tracy shall be responsible for 40% thereof." In support of its decision, the court stated, "This division by the Court is based upon the fact that upon entry of a Maintenance Order, Dean will retain 60% of the net household income while Tracy will have 40%." As noted above, the court conducted a detailed maintenance analysis pursuant to section 504 of the Act. The court considered Tracy's nonmarital assets, her limited earning capacity, and her contributions as a homemaker. The court allocated the student loan debt in proportion to the parties' abilities to pay after the maintenance award.

¶ 37    Based on the testimony and evidence before us, we cannot say that the trial court's decision to allocate the student loan debt in accordance with the maintenance calculation was "arbitrary, fanciful, or unreasonable."

¶ 38                                 C. The Law Firm Interest

¶ 39    Lastly, Dean argues that the trial court erred by awarding Tracy the full value of his partnership interest in his law firm. Specifically, Dean argues that the court erred in its division of marital property by awarding Tracy the full $33,000 value of Dean's 11% interest in the firm, instead of awarding her $16,500, which would have been half of the value of his interest.

¶ 40    The distribution of marital property lies within the sound discretion of the trial court, and we will not disturb its judgment on review absent an abuse of discretion. *In re Marriage of Eidson*, 235 Ill. App. 3d 907, 911 (1992). An abuse of discretion occurs when the decision was " 'clearly against logic.' " *In re Marriage of Munger*, 339 Ill. App. 3d 1104, 1107 (2003) (quoting *State Farm Fire & Casualty Co. v. Leverton*, 314 Ill. App. 3d 1080, 1083 (2000)). "[T]he question is

12

whether the trial court made an arbitrary decision, without using conscientious judgment, or whether, in view of all of the circumstances, the trial court overstepped the bounds of reason, ignored the law, and thereby caused substantial prejudice to the appellant." *Id.* An abuse of discretion occurs only when the trial court's ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *Hluska*, 2011 IL App (1st) 092636, ¶ 61.

¶ 41    The disposition of property in a dissolution of marriage proceeding is governed by section 503 of the Act (750 ILCS 5/503 (West 2022)). Before a court may dispose of property upon the dissolution of marriage, it must determine whether the property is marital or nonmarital. *In re Marriage of Henke*, 313 Ill. App. 3d 159, 166 (2000). After the trial court classifies the property as marital or nonmarital, it awards each spouse his or her nonmarital property and divides the marital property into just proportions. 750 ILCS 5/503(d) (West 2022). As noted above, the distribution by the court need not be equal so long as it is equitable. *Werries*, 247 Ill. App. 3d at 649. Under the Act, there is a rebuttable presumption that all property acquired by either spouse after the marriage and before a judgment of dissolution of marriage is marital property. 750 ILCS 5/503(b)(1) (West 2022); *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 45.

¶ 42    In the case at hand, the trial court correctly classified the law firm partnership interest as marital property. In its December 4, 2024, judgment, the court stated, "The partnership interest accrued during the marriage and is marital property." The court noted that although at the time of trial, the value of the account was in excess of $600,000, the firm used the account to pay out profits to the partners. The court expressly stated it would consider such profits in its maintenance calculations. The court further calculated, based on the evidence presented at trial, that the account was maintained at a minimum of $300,000 for purposes of operation of the firm. The court noted

13

that if Dean terminated his interest in the partnership, he would receive 11% or $33,000. As such, the court assigned a value of $33,000 to the account.

¶ 43  While the trial court's assigned value of $33,000 was proper, its order of $33,000 to Tracy from the sale of the marital home was error. The court held that the proceeds of the sale of the residence should first be used to pay back the costs that the parties expended on maintenance and repairs of the property. The court then ordered the remaining net proceeds to be divided 50% to Tracy and 50% to Dean. The court ordered, "From Dean's 50% share, the sum of $33,000 shall be paid to Tracy to offset the value of the law firm partnership interest awarded to Dean." This division is inconsistent with the remainder of the court's judgment. Throughout its judgment, the court divided all assets with fixed values equally. For example, it ordered a 50% division of the retirement accounts, and reimbursement for estimated taxes. Dean argues that the court should have reduced his share of the sale proceeds by $16,500, not $33,000. We agree.

¶ 44  In light of the record on appeal and the remainder of the trial court's judgment, we find that the court erred by awarding Tracy the full value of the law firm partnership interest. Accordingly, we vacate this portion of the judgment and remand with directions for the trial court to award Tracy the sum of $16,500 to offset 50% of the value of the law firm partnership, or in the alternative to articulate its decision to award the full value to Tracy.

¶ 45                                      III. CONCLUSION

¶ 46  For the reasons stated herein, we affirm in part, reverse in part, and remand with directions the December 4, 2024, judgment of the circuit court of St. Clair County.


¶ 47  Affirmed in part and reversed in part; cause remanded with directions.